301 S.E.2d 790

**Jerry W. CARDWELL**

v.

**STATE WORKMEN'S COMPENSATION COMMR. and Itmann Coal Co.**

**No. 15579.**

Supreme Court of Appeals of West Virginia.

March 28, 1983.

Jerry W. Cardwell, pro se.

Philip A. LaCaria, Tutwiler, LaCaria & Murensky, Welch, for appellees.

HARSHBARGER, Justice:

Claimant, Jerry W. Cardwell, a former underground coal miner, is appealing, *pro*

*se,* from a decision by the Workmen's Compensation Appeal Board that he had been adequately compensated by an award of 38 percent permanent partial disability. Cardwell contends that because Itmann refused to reemploy him because of his physical condition, he should be declared totally and permanently disabled. Cardwell's *a fortiori* argument fairly raises a rather complex question: of what evidentiary value is an employer's refusal to put an injured worker back to work? We will discuss the question, but it is because the Appeal Board failed to give consideration to all the factors that must be considered in a claim for permanent total disability, that we reverse and remand to the Commissioner for further proceedings.

### I.

The facts in this unduly protracted claim [1] are that on May 14, 1973, Cardwell, now 40, was drilling a shot hole when an explosion occurred, seriously injuring his right eye, requiring enucleation (removal) of the eye and removal of damaged tissue involving his upper eyebrow and eyelid. Medical treatment was completed at John Hopkins Hospital in Baltimore, Maryland, where a prothesis was fitted.

The Commissioner subsequently referred Cardwell to Dr. Russell Kessel for an examination and disability evaluation. Dr. Kessel, in a report dated July 30, 1974, estimated permanent partial disability for the loss of the right eye at 33 percent, the statutory minimum provided by W.Va. Code, 23–4–6(f),[2] and recommended an additional 5 percent permanent partial disability award for the other facets of claimant's injury. The Commissioner then referred the claimant to three other physicians. J. Elliott Blaydes, Jr., an ophthalmologist, was of the opinion that he had reached his maximum degree of improvement and needed no further treatment; Dr. William F. Hillier, Jr., a neurologist, reported that he suffered no organic brain disability; Dr. Ralph S. Smith, Jr., a psychiatrist, found no psychiatric disability. Based on this medical evidence, the Commissioner granted Cardwell a 38 percent permanent partial disability award.

The employer and Cardwell protested that ruling. Several hearings were held thereafter, but Cardwell did not testify. He submitted three medical reports from Dr. Florien Vaughn, who had died and had not been cross-examined. None of his reports contain any clinical findings relating to Cardwell's impairment or disability. The first report dated September 27, 1974, simply states:

> Mr. Jerry W. Cardwell, 7356294, because of injuries sustained while working in mine, is unable at present to qualify for gainful employment. Consequently he needs to be rehabilitated.

The second, of February 3, 1976, reported:

> I am giving him regularly the medicine for his headaches, but I cannot release him to do underground mining. He would like for the Itmann Coal Company to give him other work.

The third, dated February 18, 1976, was addressed to the Social Security Administration:

> Mr. Jerry W. Cardwell, Itmann, W.Va., has been totally disabled since May 14, 1973, and has been under my care and treatment. He continues to be totally disabled and is under my care.

---

**1.** "Long delay in processing claims for workmen's compensation is not consistent with the declared policy of the Legislature to determine the rights of claimants as speedily and expeditiously as possible. *W.Va.Code,* 23–5–3a." Syllabus Point 1, *Workman v. Workmen's Compensation Commissioner,* 160 W.Va. 656, 236 S.E.2d 236 (1977).

**2.** W.Va.Code, 23–4–6(f) provides:
"If the injury results in the total loss by severance of any of the members named in this subdivision, the percentage of disability shall be determined by the commissioner, with the following table establishing the minimum percentage of disability. In determining the percentage of disability, the commissioner may be guided by but shall not be limited to the disabilities enumerated in the following table, and in no event shall the disability be less than that specified in the following table:

.   .   .   .   .

"(f) The total and irrecoverable loss of the sight of one eye shall be considered a thirty-three percent disability."

Cardwell, who represented himself throughout these proceedings, also introduced the May 14, 1976 decision of a federal administrative law judge denying his claim for social security disability benefits. The denial was based on a finding that although Cardwell had medical impairments preventing his return to his former employment, he retained the residual capacity to perform sedentary work in various positions enumerated by a vocational expert.[3] The record also reveals that Cardwell suffered an ankle injury in a coal mining accident for which he received a 12 percent permanent partial disability award.

Cardwell also introduced a letter dated June 23, 1975, addressed to Itmann Coal Company and the Commissioner, stating that he was incapable of returning to his previous position, but desired selective employment with Itmann Coal Company, Pocahontas Fuel Company, Consolidated Coal Company, or Continental Coal Company, even if vocation rehabilitation would be necessary to enable him to perform such employment.

A copy of a BCOA–UMWA Standard Grievance Form with Cardwell's signature was also introduced. His grievance was that he had been denied the right to bid on a car dropper job while he was off work due to his injury, because he was not notified of the job opening. According to the grievance form, the employer considered Cardwell not to be one of its employees. The evidence does not show how this grievance was resolved.

Following several hearings, the claim was submitted for decision. The Commissioner affirmed the prior ruling of a 38 percent permanent partial disability and rejected Cardwell's claim for a permanent total disability award. Cardwell appealed. The Appeal Board affirmed the Commissioner, discounting Dr. Vaughn's medical reports as being conclusory and noting that none of the other medical evidence came close to a recommended finding of total permanent disability. This appeal followed.

## II.

Before answering the broad questions raised by this appeal, we observe that total disability for compensation purposes is a unique, rather complex legal concept, that is easier to state than it is to apply to seemingly infinite factual situations.

We fully appreciate the difficulty of stating a precise definition of total permanent disability; we think further elaboration on that definition, however, is vitally important to all West Virginians.

Disability determinations are a blend of ingredients. First, there is the functional, physical or anatomical loss to the body as a whole. This is essentially a medical matter. In many instances the medical evidence standing alone will establish permanent total disability. The second major ingredient involves a determination of the extent to which the physical loss, combined with nonmedical conditions, results in loss of earnings or impairs earning capacity. This second ingredient requires consideration of the degree to which the injury has affected a person's capability to perform or obtain work. Medical evidence must be considered along with the worker's customary employment, his age, training, education, intelligence, and any other matter that can reasonably be expected to affect earning power and regular employment in the labor market.

Our leading case on the evaluation of total disability in workmen's compensation claims is *Posey v. State Work-*

---

**3.** A person seeking social security disability benefits must satisfy a more restrictive definition of total disability than exists in our workmen's compensation law. Disability is defined for social security purposes as the "inability to engage in *any* gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of … 12 months." (Emphasis added.) 42 U.S.C.A. §§ 416(i)(1), 423(d)(1)(A). The federal courts generally hold that once a claimant establishes he can no longer engage in his previous occupations, the burden shifts to the Secretary of Health and Human Services to show what alternative occupation the claimant can perform. *See, e.g., Taylor v. Weinberger,* 512 F.2d 664 (4th Cir.1975). *See also* H. McCormick, *Social Security Claims and Procedures* § 392 (2d Ed.1978).

*men's Compensation Commissioner*, 157 W.Va. 285, 201 S.E.2d 102 (1973). The *Posey* Court, after reviewing our decisional law and the law of other jurisdictions, committed this State to the "whole man" method for evaluating disability, a standard more consistent with our legislature's workmen's compensation philosophy than that which prevails in some jurisdictions. *See* 2 A. Larson, *The Law of Workmen's Compensation* § 57 (1981). Syllabus Points 2 and 3 of *Posey* state, respectively:

In determining the percentage of disability for a workmen's compensation claimant, consideration must be given to the impairment of the employee's earning capacity, to the effect of possible impairment of his efficiency at work, and the impairment to the normal pursuit of everyday living.

A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training. Each case will be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience.

As was noted in *Posey*, the legislature amended our compensation law in 1970, adding a provision that provides guidance about "future determinations of total disability." *Id.*, 157 W.Va. at 293, 201 S.E.2d, at 107. W.Va.Code, 23–4–6(n) states:

A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time shall be considered in determining the issue of total disability.

*See also*, Syllabus Point 2, *Linville v. State Workmen's Compensation Commissioner*, 160 W.Va. 549, 236 S.E.2d 41 (1977). ▮ By enacting this statute, the Legislature mandated that the Commissioner and Appeal Board consider whether an injured employee has been rendered unable to perform his customary employment or work requiring similar skills and abilities. This provision, the only statute bearing on the definition of permanent total disability, manifests an intent that a worker's inability to perform his customary work is an important, though not conclusive, factor that must be considered.

Several of our compensation cases have involved claimants who were substantially disabled in the medical or anatomical sense, but who were nonetheless able to return to some type of gainful employment. In these cases, we have followed the rule that the fact that a claimant fortuitously returns to work after his injury and receives the same or even higher wages will not, standing alone, defeat a claim for permanent total disability. Syllabus Point 2, *Linville v. State Workmen's Compensation Commissioner*, *supra*; *Kamensky v. State Workmen's Compensation Commissioner*, 148 W.Va. 258, 134 S.E.2d 582 (1964); Syllabus Point 2, *Gay Coal & Coke Co. v. State Workmen's Compensation Commissioner*, 121 W.Va. 200, 2 S.E.2d 265 (1939); *Ashworth v. State Workmen's Compensation Commissioner*, 117 W.Va. 73, 183 S.E. 912 (1936).

▮ We have not, however, considered the converse situation involving a claimant who, though not obviously totally disabled from a medical viewpoint, is unable to obtain employment because of his medical condition. Professor Larson wrote:

Inability to get work, traceable directly to a compensable injury, may be as effective in establishing disability as inability to perform work.... Even without total medical disability, the two essentials are present: wage loss, and causation of the wage loss by work-connected injury. The fact that the wage loss comes about through refusal or unavailability of employment rather than through incapacity to perform the work does not change the result.

In many of these cases, the central issue becomes one of proof: How is unavailability or availability of work shown, and who has the burden of proof? Must

the employee prove the unavailability of suitable employment to one in his condition, by evidence of actual attempts to obtain a job or by evidence of employment conditions in that vicinity, or must the employer affirmatively show the availability of the kind of jobs that claimant can still perform? There is no simple yes-or-no answer to these questions. The result in a particular case will involve, once more, a balancing of medical and economic factors.

At the outset, one might suppose that the refusal of the defendant-employer himself to employ the claimant would be the strongest kind of evidence against that employer. This reasoning was found persuasive in the Rhode Island case of *Leonardo v. Uncas Manufacturing Company* [77 R.I. 245, 75 A.2d 188 (1950)] where claimant was obliged to quit work after a back injury. He sought lighter work from his employer, which was refused; he also looked for similar work in three other large shops without success. An award of maximum partial disability was affirmed. The employer contended that claimant must prove by actual evidence the degree of his disability; *but the court replied that the employer's own refusal to give him even light work was in itself evidence enough, and that it would be unreasonable to place a burden of proof on the employee which he has no way of satisfying if no one will give him a job in which he can demonstrate what he can do....*

A suggested general-purpose principle on burden of proof in this class of cases would run as follows: If the evidence of degree of obvious physical impairment, coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claim-

ant. ... The corollary of the general-purpose principle just stated would be this: If the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to place the burden of proof on him to establish unavailability of work to a person in his circumstances, which normally would require a showing that he has made reasonable efforts to secure suitable employment. (Emphasis supplied and footnotes omitted.) 2 A. Larson's, *Workmen's Compensation Law* § 57.61 (1981).

■ The odd-lot doctrine that Professor Larson refers to is accepted in many other jurisdictions. *See* 2 A. Larson's *Workmen's Compensation Law* § 57.51 (1981).[4] Briefly stated, this doctrine is that total disability for compensation purposes can be found when an employee has been so handicapped by his physical injury, though not utterly immobilized and bedridden, that he cannot be regularly employed in any well-known segment of the labor market. *Id.*

■ The rule is well stated in *Lee v. Minneapolis State Ry. Co.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950):

An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.

*See also, Spring v. Dept. of Labor and Industries*, 96 Wash.2d 914, 640 P.2d 1 (1982).

■ Thus, when permanent partial disability in the medical sense combines with other factors such as age, education, and intelligence, to make a person unemployable, he is entitled to a permanent total disability award. *See J.A. Foust Coal Co. v. Messer*, 195 Va. 762, 80 S.E.2d 533 (1954); *Wilson v. Weyerhaeuser Co.*, 30 Or.App. 403, 567 P.2d 567 (1977).

---

**4.** The theory behind the odd-lot doctrine is not new and is frequently traced back to language in *Cardiff Corp. v. Hall*, 1 K.B. 1009 (1911); *see also*, C. Mills, *Workers Compensation* (New South Wales) § 11 at 186–287 (1979); Brasseaux, Odd Man In: Louisiana Adopts the Odd-Lot Doctrine—A Suggested Analysis, 42 La.L. Rev. 821 (1982).

We have followed the principle underlying the odd-lot doctrine for many years. In *Gay Coal & Coke Co. v. Workmen's Compensation Com'r.,* 121 W.Va. 200, 2 S.E.2d 265 (1939), for example, the claimant sustained an injury requiring amputation of his right leg above the knee. Osteomyelitis developed in the remaining portion of the right thigh and spread to the left forearm requiring further surgery, resulting in permanent impairment of the left forearm and limited use of the hand. The Commissioner found an 80 percent permanent partial disability. Nearly three years later after a reoccurrence of the osteomyelitis in the left forearm, the claimant petitioned for and was granted a total permanent disability award. The employer protested and introduced evidence that the claimant had been employed for three years in the company's lamp house. The coal company appealed, contending such an award was improper because the claimant had been regularly employed and had received wages for approximately three years following the injury.

In rejecting the employer's argument and affirming the permanent total disability award, the Court stated:

> The fact that an injured employee continues to work for the same employer at lighter employment and receives wages therefor does not prevent him from receiving a total and permanent disability rating, unless the lighter employment is such as would ordinarily be available to a person in the same situation. *McDaniel v. Compensation Appeal Board,* 118 W.Va. 596, 601, 191 S.E. 362, 365.

> We are of opinion that the work which the claimant performs is not of a character which would usually be available to a person in his impaired condition, and, though he is temporarily employed, his employment does not prejudice his right to a total permanent disability rating. *Id.,* 121 W.Va. at 204–205, 2 S.E.2d, at 266–267.

■ We have never written about who has the burden of proving the availability of suitable work, but we find the approach suggested by Professor Larson to be a reasonable placement of the burden of proof, and hereby adopt both rules as general principles of law in this jurisdiction.

■ Furthermore, we find that an employer's refusal to reemploy an injured worker because of his medical condition, in light work that he can do, can be persuasive evidence of the worker's inability to obtain employment. This is one factor that may weigh heavily as proof of the availability of work. *Chrysler v. Duff,* 314 A.2d 915, 917–18 (Del.1973); *see Cohn v. Haile,* 267 Ark. 734, 589 S.W.2d 600 (Ark. App.1979).

We think that most employers, particularly large corporations that hire people in a variety of positions, will retain a worker in his former position or in another capacity after he has had an occupational injury. The legislature has deliberately sought to encourage this practice by creating a second-injury fund as part of our compensation system. W.Va.Code, 23–3–1. Generally stated, the second-injury fund statute applies when a worker has sustained two or more injuries that combine to produce total permanent disability. In this circumstance, the employer is only responsible for the amount of disability attributable to the current "second injury". The balance of the award is paid from the second-injury fund. *See, e.g., Gillispie v. State Workmen's Compensation Commissioner,* 157 W.Va. 829, 205 S.E.2d 164 (1974).

In a related area, the legislature in 1981 amended The West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.,* to make it an unlawful discriminatory practice for any employer to discriminate against an individual who is handicapped. W.Va.Code, 5–11–9. The term "handicap" is defined by the Act to mean "any physical or mental impairment which substantially limits one or more of an individual's major life activities." W.Va.Code, 5–11–3(t).[5]

---

**5.** The West Virginia Human Rights Commission has promulgated Interpretive Rules Governing Discrimination on the Handicapped that were filed in the Secretary of State's Office on December 21, 1982. Subsection 4.07 provides:

*"Persons Whose Handicap Arises During Employment*—When an individual becomes handi-

This record does not present sufficient information for a decision about whether Cardwell was refused employment at his former job or elsewhere because of his medical condition, a determination that should initially be made by the workmen's compensation commissioner.

 The Appeal Board in its opinion did not consider whether Cardwell was able to perform his customary employment or other gainful activity requiring comparable skills and abilities as required by W.Va. Code, 23–4–6(n), and for this reason its final decision must be reversed. As we have previously held:

An order of the Workmen's Compensation Appeal Board ... dealing with an award of compensation based on percentage, or otherwise, which does not take into consideration all of the factors to be considered in making an award, is therefore plainly wrong and will be reversed by this Court, with directions to enter a proper order as indicated by the evidence. Syllabus Point 1, *Posey v. State Workmen's Compensation Commissioner*, 157 W.Va. 258, 201 S.E.2d 102 (1973), *quoting*, Syllabus, *Kamensky v. State Compensation Commissioner*, 148 W.Va. 258, 134 S.E.2d 582 (1964).

*See also*, Syllabus Point 2, *Workman v. State Workmen's Compensation Commissioner*, 160 W.Va. 656, 236 S.E.2d 236 (1977) (in part).

On remand, the question of whether Cardwell's disability renders him unable to engage in his former employment or employment for which he is suited by training and experience must be answered. Careful consideration should be given to the findings of the administrative law judge in Cardwell's social security disability claim. Whether Cardwell is an odd-lot worker must also be determined. A company official could be called to testify whether Cardwell's medical condition had anything to do with the company's decision not to put him back to work. Cardwell could also testify about his age, education, experience, loss of efficiency at work, and any other matters reasonably expected to affect his earning power.

For the foregoing reasons, the final decision of the Workmen's Compensation Appeal Board is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

capped in the course of employment, the employer shall, if possible through reasonable accommodations, continue the individual in the same position or reassign the employee to a new position for which s/he is qualified or for which, with training, s/he may become qualified. The requirements of this paragraph shall be interpreted in such a way as to be consistent with *WV Code* § 23–5A–1, which prohibits employers from discriminating against employees because they have applied for or received Workmen's Compensation benefits."