373 S.E.2d 495

Charlie SMITH, Sr.

v.

WORKERS' COMPENSATION COMMIS-
SIONER and LOAC Enterprises and
McNamee Cheyenne Mining Company.

Paul D. LIGHTFOOT

v.

WORKERS' COMPENSATION
COMMISSIONER and Eastern
Associated Coal Corporation.

Nos. 18328, 18292.

Supreme Court of Appeals of
West Virginia.

Sept. 16, 1988.

Amos C. Wilson, Logan, for Charlie Smith and Paul D. Lightfoot.

Howard Persinger, Williamson, for Loac Enterprises and McNamee Cheyenne Min. Co.

Boweles, McDavid, Graff & Love, Charleston, for Eastern Associated Coal Corp.

MILLER, Justice:

We have consolidated two workers' compensation appeals for the resolution of a common legal issue involving whether the second injury fund statute, W.Va.Code, 23–3–1,[1] can be invoked by a claimant to obtain a permanent total disability award where no additional disability has been proven in the current claim.

This issue arose in the following general procedural context. In both these cases, the claimants had previously filed occupational pneumoconiosis claims and were given permanent partial disability awards. They continued working after filing these claims and filed new occupational pneumoconiosis claims based upon their additional exposure, but were unable to establish any additional pulmonary impairment above that which had been awarded in the prior claims. During the proceedings before the Commissioner, the claimants moved for a life award under the second injury fund statute based upon the combined effects of several prior injuries and their occupational pneumoconiosis.

The Commissioner and Appeal Board interpreted the second injury fund statute as requiring a claimant to prove some degree of additional permanent partial disability in his current claim in order to qualify for a life award and, therefore, denied the motions in both claims. Concluding that this interpretation is legally erroneous, we reverse and remand with directions.

## I.

## PROCEDURAL HISTORY

### Charlie Smith, Sr.

The claimant, Charlie Smith, Sr., began working in the coal mining industry in 1947 and worked in that type of employment until September, 1980. During this period, he suffered numerous occupational injuries. He filed claims for these injuries, but generally neither sought nor was granted any permanent disability awards, though he did receive a 12 percent permanent partial disability award in Kentucky for an injury to his right foot in 1974. He also filed an occupational pneumoconiosis application in 1972 and was granted a 30 percent permanent partial disability award. The last payment on this award was mailed to the claimant in December, 1976.

In September, 1980, the claimant filed a new occupational pneumoconiosis claim. The claim was held compensable, a finding of additional exposure to the hazards of occupational pneumoconiosis was made, and the claimant was examined by the Occupational Pneumoconiosis Board in January, 1982, which found no additional pulmonary impairment. The claimant protested this determination. At a subsequent pro-

---

1. W.Va.Code, 23–3–1, in pertinent part, provides:

"If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury: Provided, that in addition to such compensation, and after the completion of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for permanent total disability out of a special reserve of the surplus fund known as the second injury reserve, created in the manner hereinbefore set forth."

test hearing, the claimant testified concerning his age, education, experience, and prior injuries. Counsel for the claimant also introduced medical and vocational reports indicating that the claimant was permanently and totally disabled from the combined effects of his previous injuries and occupational pneumoconiosis.

At the last protest hearing in October, 1985, the claimant, by counsel, moved that he be granted a permanent total disability award under the second injury fund statute with no additional charges to the employer's account. In the alternative, counsel made a motion that the claimant's 1980 occupational pneumoconiosis claim be treated as a petition to reopen his 1972 occupational pneumoconiosis claim in which he had been granted a 30 percent permanent partial disability award.

In March, 1986, the Commissioner affirmed the prior ruling which held that the claimant had not established any additional disability. The Commissioner also denied the claimant's motion for a permanent total disability award under the second injury fund statute. The claimant appealed, and the Appeal Board affirmed the Commissioner's ruling by order of November 4, 1987.

The Appeal Board concluded that a claimant cannot be permanently and totally disabled within the meaning of the second injury fund statute, W.Va.Code, 23–3–1, if "there has been no ... second injury to combine with a previous injury or injuries." It reasoned that since the claimant had not established any additional disability in his current occupational pneumoconiosis claim, a permanent total disability award under

the second injury fund statute could not be made.

The Appeal Board found that the claimant had chosen to file a new claim for occupational pneumoconiosis pursuant to *Ford v. State Workmen's Compensation Comm'r*, 160 W.Va. 629, 236 S.E.2d 234 (1977),[2] rather than to petition to reopen his 1972 occupational pneumoconiosis claim. The Appeal Board, therefore, concluded that the claimant by way of his 1985 motion at a protest hearing could not now have his 1980 occupational pneumoconiosis application treated as a petition to reopen his 1972 occupational pneumoconiosis claim. The Appeal Board also found that the time limitations governing the reopening of claims contained in W.Va.Code, 23–4–16, now prohibited further consideration of the 1972 occupational pneumoconiosis claim or any prior injuries.[3]

## Paul D. Lightfoot

Paul D. Lightfoot was employed by Eastern Associated Coal Corporation from July, 1965, until May, 1983. In 1960, while working for another employer, he suffered a compression fracture and was placed in a body cast for six months. In 1965, he suffered a severe injury to his right leg in a slate fall which culminated in the amputation of his leg about six inches below the knee. After recovering from this injury, he was fitted with a prosthesis and returned to work. His employer created a job for him as a bit sharpener, which he performed at a bench utilizing a power grinder. The claimant was ultimately granted a 48 percent permanent partial disability award for this leg injury.

**2.** The single Syllabus of *Ford* states: "A claimant who has been awarded permanent partial disability benefits for an occupational pneumoconiosis claim has the option to file a new claim for a new injury resulting from exposure to the hazards of occupational pneumoconiosis or to proceed under *W.Va.Code*, 1931, 23–4–6a, as amended, seeking a reopening of his previous claim."

**3.** Under W.Va.Code, 23–4–16, a reopening may be made within five years of the last payment of permanent partial disability. *See* note 6, *infra.* The last payment was made in December of

1976 on the claimant's 1972 occupational pneumoconiosis award. If the claimant had styled his 1980 occupational pneumoconiosis filing as a petition to reopen, it would have been timely. The legislative policy that just claims not be denied "on technicalities," W.Va.Code, 23–5–3a, should have enabled the 1980 petition to be considered as a reopening. This would have enabled the claim to be treated under *Cline v. State Workmen's Compensation Comm'r*, 156 W.Va. 647, 196 S.E.2d 296 (1973), which we discuss in Part II, *infra.*

During the course of his work as a bit sharpener, the claimant was exposed to silicone dust from the grinding wheel. Prior to his layoff in 1983 due to a reduction in force, the claimant filed at least three occupational pneumoconiosis claims based upon this exposure and in connection with a 1974 claim was awarded a statutory 5 percent permanent partial disability award for occupational pneumoconiosis without pulmonary impairment which was paid in a lump sum in April, 1980.

The claimant filed a new application for occupational pneumoconiosis benefits in November, 1984. The Commissioner in May, 1985 found this claim had been timely filed and that the claimant had met the exposure requirements, and referred the claimant to the Occupational Pneumoconiosis Board. The Board examined the claimant and concluded that he had no additional impairment over the 5 percent previously awarded in the 1974 claim.

The claimant protested the Board's findings, and at a hearing in October, 1986, the claimant by counsel submitted medical and vocational reports indicating that he was permanently and totally disabled. Records relating to the claimant's prior orthopedic injuries and his occupational pneumoconiosis claims were also introduced into evidence. The claimant then moved for a permanent total disability award under the second injury fund statute based upon the combined effects of his prior injuries and his occupational pneumoconiosis.

The Commissioner denied the motion for a second injury life award, and the Appeal Board affirmed. The Appeal Board concluded that the claimant was not entitled to a total permanent disability award under the second injury fund statute because he suffered no permanent disability in connection with his current claim. The Appeal Board stated:

> "[It was] absolutely clear in this case that this claimant has not sustained a disability, permanent in nature, in the

instant claim. Therefore, there can be no disability in this claim to have compounded whatever previous difficulties this claimant may have had. It would be anomolous [sic] to grant a second injury life award to a claimant in a claim where that claimant did not sustain any further disability."

## II.

### SECOND INJURY FUND STATUTE

■ The legal issue presented by these appeals has largely been resolved by prior decisions of this Court applying the second injury fund statute in factual situations similar to these cases. In *Cline v. State Workmen's Compensation Comm'r*, 156 W.Va. 647, 196 S.E.2d 296 (1973), this Court decided that the claimant was eligible for a life award payable from the second injury fund and held in Syllabus Point 1:

> " 'An order of the Workmen's Compensation Appeal Board denying an award of total permanent disability will be reversed as plainly wrong, where the uncontroverted evidence shows that an employee, who had a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, sustains a subsequent injury in the course of and as a result of his employment, the combined effect of which renders him totally and permanently disabled.' Syllabus, *Roberts v. State Workmen's Compensation Commissioner* [155] W.Va. [846], 188 S.E.2d 771 (1972); [4] Point 2, syllabus, *Hughes v. State Workmen's Compensation Commissioner*, [156] W.Va. [146], 191 S.E.2d 606 (1972)."

The claimant in *Cline* was a coal miner who had injured his back in 1961 while working in low coal and had been granted a 30 percent permanent partial disability award in 1967. The claimant petitioned to reopen the claim in 1968, but was denied

---

**4.** *Roberts* dealt with a second injury with the Commissioner and Appeal Board failing to find that the second injury, combined with prior injuries, produced total permanent disability. We reversed, holding that the medical evidence warranted a second injury life award.

any additional permanent partial disability award based upon the medical evidence. The claimant protested and at a subsequent hearing introduced medical reports and testimony concerning his 1961 back injury as well as eight previous injuries he had sustained dating back to 1943. In connection with a number of these previous work-related injuries, the claimant had filed claims to obtain medical treatment, but had not received any permanent disability awards for these injuries. The physicians whose reports were introduced all concluded that the claimant was totally and permanently disabled due to the combined effects of his previous injuries and his current medical condition.

At the conclusion of this protest hearing, counsel for the claimant moved that the reopening petition be considered a second injury claim and that the claimant be granted a total permanent disability award without any additional charge to the employer's account. The Commissioner affirmed his prior ruling granting no additional permanent partial disability benefits. The Appeal Board affirmed that decision.

This Court concluded that the claimant had satisfied the clear and unambiguous requirements of the second injury fund statute and was entitled to a life award:

"We find that the language of this Code section is clear and unambiguous and that the appellant's case meets the requirements of this provision. The record discloses no testimony or medical records, other than that of claimant's medical experts, which give consideration to Cline's injuries suffered previous to 1961.

* * * * * *

"We hold, therefore, the appellant Cline has shown by uncontroverted evidence he has a definitely ascertainable physical impairment caused by previous injuries, compensable and noncompensable, and has, in addition, sustained a subsequent injury. The uncontradicted evidence establishes that the combined effect of the previous and subsequent injuries has rendered the claimant totally and permanently disabled. When an order of the Appeal Board denies a claim-

ant a total disability rating and a life award under the second injury statute in the face of uncontroverted evidence clearly establishing total disability, such order must be reversed as plainly wrong." 156 W.Va. at 651, 196 S.E.2d at 298.

The significance of *Cline* is that on the petition to reopen filed in 1968, with regard to the claimant's 1961 back injury, the Commissioner found that there was no increase in disability above the 30 percent that he had already been awarded. Yet, this Court decided that the 1961 injury combined with the claimant's prior disabilities to render him totally and permanently disabled and eligible for a second injury life award.

In *Hughes v. State Workmen's Compensation Comm'r*, 156 W.Va. 146, 191 S.E.2d 606 (1972), this Court, based upon the uncontroverted nature of the evidence, also reversed the Appeal Board and granted the claimant a total permanent disability award under the second injury fund statute. Again, there was no showing of any additional permanent partial disability resulting from the last injury which formed the basis for the reopening.

Hughes, a coal miner, suffered a back injury in 1961. He was able to return to work after three days and continued working until the coal mine closed in 1972. He did not work thereafter. He was granted a 5 percent permanent partial disability award for the 1961 injury. The claim was subsequently reopened three times and on each occasion an additional 5 percent permanent partial disability award was granted. On the fourth reopening, he was ultimately found not to have any increased disability due to his back injury.

During the course of the reopening procedures, counsel for the claimant made a motion requesting the Commissioner to grant the claimant a life award under the second injury fund statute and introduced medical reports from three doctors in support of the motion. These physicians stated that the claimant was totally and permanently disabled as a result of the combined effect of all of the claimant's injuries. The Commissioner did not act on the second

injury request, and denied any further permanent partial disability award on the reopening. The Appeal Board affirmed, and we reversed holding the second injury life award standard had been met.

It is clear that in *Cline* and *Hughes,* the claimants were not awarded any additional permanent partial disability benefits for the most recent injury. A motion for a second injury life award was made in the context of a petition to reopen the claimant's most recent injury claim. In both cases, this Court determined that the claimant was permanently and totally disabled by the combined effects of all of his previous injuries. Second injury benefits were awarded even though there was no increase in disability in his last injury which formed the basis for reopening and the request for a second injury life award.[5]

The Court in *Cline* and *Hughes* looked at the underlying substantive merits of the claims. Viewing the claims from this perspective, the Court concluded that the claimants' previous impairments and their subsequent medical conditions had in combination produced total permanent disability for workers' compensation purposes. The evidence on that issue was uncontroverted.

In both of the present cases, the claimants could have filed for reopening of their claims under W.Va.Code, 23-5-1a, since at the time their filings were made they were within the five year period prescribed in W.Va.Code, 23-4-16.[6] This latter provision permits filing for reopenings "within five years after the commissioner shall have made the last payment in the original award or any subsequent increase thereto in any permanent disability case."[7] Had these cases been treated as reopening filings, they would have presented the same fact pattern as did *Cline* and *Hughes.* The fact that the claimants on reopening did not show any increase in disability would not have foreclosed a second injury life award if total disability were shown.

The only difference presented in these consolidated cases is a procedural one arising out of the occupational pneumoconiosis law. Under this law, there are two avenues for a claimant to file for an increase in occupational pneumoconiosis disability benefits. First, it is clear that under W.Va. Code, 23-4-6a, a reopening may be made under W.Va.Code, 23-5-1a.[8] The second alternative is to file a new occupational pneumoconiosis claim as permitted under the single Syllabus of *Ford v. State Workmen's Compensation Comm'r, supra:* "A claimant who has been awarded permanent

5. In a related vein, we held in *Boggs v. State Workmen's Compensation Comm'r,* 163 W.Va. 413, 256 S.E.2d 890 (1979), that the Appeal Board had made a mistake of law in ruling that a second injury life award claim could not be raised in a reopening proceeding. We stated in Syllabus Point 2: "Once a reopening has been granted under *W.Va.Code,* 23-5-1a [1939], any party has the right to contest the modification and to develop fully any issues regarding a progression or aggravation of claimant's condition or to develop any other facts which were not previously considered by the Commissioner in his original findings." *See also, Bostic v. State Compensation Comm'r,* 142 W.Va. 484, 96 S.E.2d 481 (1957).

6. The material portion of W.Va.Code, 23-4-16, states:
"The power and jurisdiction of the commissioner over each case shall be continuing and he may from time to time, after due notice to the employer, make such modifications or changes with respect to former findings or orders as may be justified: Provided, that no further award may be made ... in case of nonfatal injuries ... except within five years

after payments for temporary disability shall have ceased or not more than two times within five years after the commissioner shall have made the last payment in the original award or any subsequent increase thereto in any permanent disability case."

7. In the Smith claim, the last payment of a 30 percent permanent partial disability award for occupational pneumoconiosis was made in December, 1976. Smith's filing in September, 1980, was within the five-year period for reopening. In the Lightfoot claim, the claimant was paid a statutory 5 percent permanent partial disability award in a lump sum payment in April, 1980, and filed his current claim in 1984.

8. The pertinent part of W.Va.Code, 23-4-6a is:
"The provisions of section sixteen [§ 23-4-16], article four and sections one-a, one-b, one-c and one-d [§§ 23-5-1a, 23-5-1b, 23-5-1c and 23-5-1d], article five of this chapter providing for the further adjustment of claims shall be applicable to the claim of any claimant who receives a permanent partial disability award for occupational pneumoconiosis."

788

partial disability benefits for an occupational pneumoconiosis claim has the option to file a new claim for a new injury resulting from exposure to the hazards of occupational pneumoconiosis or to proceed under *W.Va.Code*, 1931, 23–4–6a, as amended, seeking a reopening of his previous claim."

We do not believe that the choice of filing a new occupational pneumoconiosis claim rather than reopening an old occupational pneumoconiosis claim should deprive the claimant of his right to a second injury life award under the *Cline–Hughes* doctrine. There is a differential in the time period for filing a reopening and a new occupational pneumoconiosis claim, but the longer period is for a reopening under W.Va.Code, 23–5–1a which, as we have earlier noted, is five years after the last payment. W.Va.Code, 23–4–16.[9] For a new occupational pneumoconiosis claim, under the *Ford* case, it would be three years by virtue of W.Va.Code, 23–4–15.[10] Thus, a claimant obtains no statute of limitations benefit by filing a new occupational pneumoconiosis claim under *Ford*.

Common sense would dictate that a claimant would ordinarily utilize the reopening procedure to gain the longer filing period, thereby directly falling within the *Cline–Hughes* doctrine. The failure to do so in the present case should not work a procedural default where the claim is also timely filed under *Ford*. The legislature has expressly declared in W.Va.Code, 23–5–3a, that "[i]t is also the policy of this chapter to prohibit the denial of just claims of injured or deceased workmen or their dependents on technicalities." *See Boggs v. State Workmen's Compensation Comm'r*, 163 W.Va. 413, 256 S.E.2d 890 (1979); *Griffith v. State Workmen's Compensation Comm'r*, 157 W.Va. 837, 205 S.E.2d 157 (1974).

■ We, therefore, conclude that under the *Cline–Hughes* doctrine a claimant who timely files a successive claim for occupational pneumoconiosis benefits, but is unable to show any increase in permanent disability due to occupational pneumoconiosis above that previously awarded, may still prove that the combined effects of the occupational pneumoconiosis and prior definitely ascertainable physical impairments caused by injury, render the claimant totally and permanently disabled for purposes of the second injury life award statute. W.Va.Code, 23–3–1.

In both these appeals, as in *Cline* and *Hughes*, there is substantial uncontroverted evidence that the claimants have become permanently and totally disabled through the combined effect of multiple injuries received in the course of and as a result of their employment. It would serve no useful purpose to outline that evidence in detail here.[11] We, therefore, reverse the final decisions of the Workers' Compensation Appeal Board and remand these cases with the direction that an order be entered granting the claimants total permanent disability awards under the second injury fund statute, W.Va.Code, 23–3–1, without additional charges to their respective employers.

REVERSED AND REMANDED WITH DIRECTIONS.

9. For the applicable text of W.Va.Code, 23–4–16, *see note 6, supra.*

10. The pertinent part of W.Va.Code, 23–4–15, is: "To entitle any employee to compensation for occupational pneumoconiosis under the provisions hereof, the application therefor must be made on the form or forms prescribed by the commissioner and filed in the office of the commissioner within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis or within three years from and after the employee's occupational pneumoconiosis was made known to him by a physician or which he should reasonably have known, whichever shall last occur...."

It is obvious where the filing is under *Ford*, there has already been an earlier filing of an occupational pneumoconiosis claim. Consequently, the claimant would not be entitled to the "discovery" rule extension contained in W.Va.Code, 23–4–15.

11. The employer concedes this issue in both cases.