386 S.E.2d 500

**Frank HUNTER**

v.

**WORKERS' COMPENSATION COM-MISSIONER and National Coal Mining Company.**

**No. 18966.**

Supreme Court of Appeals of West Virginia.

Nov. 3, 1989.

**134**

Amos C. Wilson, Logan, for Frank Hunter.

Edward Eiland, Logan, for Workers' Compensation Com'r and Nat. Coal Mining Co.

MILLER, Justice:

The claimant, Frank Hunter, appeals from an order of the Workers' Compensation Appeal Board, dated November 16, 1988, which affirmed an order of the Workers' Compensation Commissioner denying the claimant's motion for a permanent total disability (PTD) award payable from the Second Injury Reserve Fund, W.Va.Code,

23–3–1. We remand the case for further evidentiary development.

The claimant, now age seventy-five, was employed as an underground coal miner for approximately forty-five years. For thirty-six years, the claimant was employed as a mine foreman for National Coal Mining Company and Island Creek Coal Company. In the course of his employment, the claimant sustained numerous occupational injuries, some of which resulted in permanent partial disability (PPD) awards. The claimant received a 15 percent PPD award for a back injury he sustained in April, 1968, an 8 percent PPD award for an eye injury he sustained in April, 1976, a 2 percent PPD award for an injury he sustained to his right shoulder in June, 1976, and another 2 percent PPD award for a laceration to his head in November, 1976. Additionally, in 1968 the claimant had applied for occupational pneumoconiosis (OP) benefits and was granted a 15 percent PPD award. Accordingly, the claimant has received cumulative PPD awards of 42 percent.

The claimant continued to work in the mines until November 10, 1979, when he retired at the age of sixty-five. A few months earlier, the claimant had filed a new OP claim. The Commissioner issued a nonmedical ruling that the claimant had been exposed to OP for the required statutory period. Thereafter, the claimant was examined by the OP Board, which, on April 15, 1980, found no increase in disability due to OP over the amount previously awarded in November, 1968.[1] The Commissioner confirmed these findings in an order dated April 28, 1980.

The claimant timely protested the order and, at a hearing on October 6, 1983, made a motion for a PTD award payable from the Second Injury Reserve Fund. Subsequently, the claimant was examined by five

---

1. The fact that the claimant had no progression in his second injury, which was for OP, would not preclude a second injury life award under Syllabus Point 2 of *Smith v. Workers' Compensation Comm'r,* 179 W.Va. 782, 373 S.E.2d 495 (1988):

   "A claimant who timely files a successive claim for occupational pneumoconiosis benefits, but is unable to show any increase in permanent disability due to occupational pneumoconiosis above that previously awarded, may still prove that the combined effects of the occupational pneumoconiosis and prior definitely ascertainable physical impairments caused by injury, render the claimant totally and permanently disabled under the second injury life award statute. W.Va.Code, 23–3–1."

physicians, A.E. Landis, M.D.; Cesar J. Lesaca, M.D.; Ray E. Burger, M.D.; Kwan H. Lee, M.D., and R.A. Crawford, Jr., M.D. The claimant was also examined by two psychologists, Arthur C. Ballas, Ph.D., and Paul L. Crawford, Ph.D., and by a vocational rehabilitation specialist, Phyllis C. Shapiro, M.A. Seven of the eight professionals were of the view that, based on his advanced age and medical disability, the claimant would be unable to return to work as a coal miner and rehabilitation would be futile.

The most comprehensive consideration of the age factor was given by Dr. Landis, who examined the claimant at the request of the Commissioner. In his letter dated October 29, 1986, Dr. Landis stated that the claimant's orthopedic injuries were not of a substantial nature and that for his age, he was in good health. Dr. Landis did acknowledge the claimant's OP condition, but stated that he did not believe it represented a serious impairment.[2] It was this evidence which led the Appeal Board to conclude in its November 16, 1988 order:

"The medical evidence of record in this claim has been very thoroughly reviewed. It will simply not support an award of permanent total disability. The

claimant continued to work after he filed the occupational pneumoconiosis claim which culminated in a 15% permanent partial disability award. In fact, there is no evidence of record that the claimant ceased working for medical reasons. The claimant has not testified in this matter, so there is no evidence to support any findings concerning the effect that the claimant's 15% occupational pneumoconiosis award and other injury claims and related residual disability have had upon his life in general."

In the context of the Second Injury Reserve Fund, we recently stated in the Syllabus, in part, of *Miracle v. Workers' Compensation Comm'r*, 181 W.Va. 443, 383 S.E.2d 75 (1989), that:

"A compensable injury which does not initially or of itself produce a permanent total disability may become progressively worse over time or combine with prior impairments under the second injury statute, W.Va.Code, 23–3–1, so as to result in a permanent total disability."[3]

In *Miracle*, as well as its companion case, *Young v. Workers' Compensation Comm'r*, 181 W.Va. 440, 383 S.E.2d 72 (1989),[4] we discussed in some detail the

---

2. The material portion of Dr. Landis's letter reads:

"It is my impression that Mr. Hunter sustained several relative minor injuries to his back, right shoulder and left ankle. He is 71 years old at this point, obviously would not be working in the coal mines, even if he had not sustained the injuries noted above. I really find it difficult to decide how a man 71 years old could be considered totally disabled for work in the mines, when he wouldn't be working in the mines in the first place. In my opinion, Mr. Hunter is not totally disabled, as a result of his orthopaedic injuries. He is actually in excellent health, for a man of 71 years of age. Possibly his lungs are not very good and maybe this would be a problem insofar as being very active. He has very little difficulty with his back considering the fact that he has a first degree spondylolisthesis but certainly is a cause for back pain. I do not believe that Mr. Hunter is permanently and totally disabled as a result of his orthopaedic injuries when combined with his Occupational Pneumoconiosis."

3. The test for determining whether a claimant is permanently and totally disabled is the same whether the disability results from a single inju-

ry or arises under the second injury statute. *See Posey v. State Workmen's Compensation Comm'r*, 157 W.Va. 285, 201 S.E.2d 102 (1973).

4. Both *Miracle* and *Young* primarily dealt with establishing the date upon which payment of a PTD award should begin under the second injury statute. Syllabus Points 1 and 2 of *Young* set out the holdings in both cases:

"1. 'A compensable injury which does not initially or of itself produce a permanent total disability may become progressively worse over time or combine with prior impairments under the second injury statute, W.Va.Code, 23–3–1, so as to result in a permanent total disability. In such circumstances, the "date of disability," from which a permanent total disability award will be calculated and paid within the meaning of W.Va.Code, 23–4–18, is the first date on which medical or other expert evidence indicated that such permanent total disability existed.' Syllabus, *Miracle v. Workers' Compensation Comm'r*, 181 W.Va. 440, 383 S.E.2d 72 (1989).

"2. Where there are multiple reports from various experts which establish that the claimant has currently reached permanent total

problems in determining when a permanent total disability arises. We referred to the familiar Syllabus Point 3 of *Posey v. State Workmen's Compensation Comm'r,* 157 W.Va. 285, 201 S.E.2d 102 (1973), which establishes a general test for permanent total disability and provides, in part:

"A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training." [5]

■ The term "training" envisions that one who, as a result of his injury, is unable to pursue his former occupation, but is capable of being retrained, may not be totally disabled. On the other hand, we have acknowledged that where the injured worker, by reason of lack of education, diminished intelligence, and advanced age, cannot be retrained, total disability may be found even though the medical evidence demonstrates only a partial disability. As we stated in *Cardwell v. State Workmen's Compensation Comm'r,* 171 W.Va. 700, 706, 301 S.E.2d 790, 796 (1983), "when permanent partial disability in the medical sense combines with other factors such as age, education, and intelligence, to make a person unemployable, he is entitled to a permanent total disability award." (Citations omitted).

■ We do not doubt *Cardwell's* premise that age is a factor to be considered in determining whether the claimant is employable through training and, therefore, bears upon his ability to perform remunerative work. However, this factor comes into play upon a finding of permanent

medical disability. The mere fact that advanced age, with its attendant normal physical and mental deterioration, precludes further employment does not, of itself, qualify one for a PTD award under our workers' compensation statute.

We are aware of no case that reaches a contrary result. Most jurisdictions treat the question of age in this context as we do—a factor in determining whether in view of his injury, education, qualifications, and experience, the claimant can engage in remunerative employment. *E.g., McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181 (Iowa 1980); *Inland Steel Co. v. Terry,* 464 S.W.2d 284 (Ky.1970); *General Elec. Co. v. Cannella,* 249 Md. 122, 238 A.2d 891 (1968); *Schuster v. Taubman,* 29 A.D.2d 697, 285 N.Y.S.2d 924 (1968); *Heffner v. Cone Mills Corp.,* 83 N.C.App. 84, 349 S.E.2d 70 (1986); *Marshall v. Industrial Comm'n,* 681 P.2d 208 (Utah 1984).

■ Thus, a second injury life award cannot be based solely on the fact that the claimant's advanced age precludes employment. It must be shown that the claimant's injuries are disabling from causes other than the normal aging process to the point that he is unable to engage in remunerative work in a field of work for which he is suited by experience or training. Under this inquiry, the original injury, which, along with any progression or aggravation thereof, combines with the second injury and gives rise to the claimant's present physical and mental disabilities, is of primary importance. Matters such as education, intelligence, age, trainability, and transferable skills are additional considerations.[6]

disability status, the Workers' Compensation Commissioner has a reasonable discretion in selecting the beginning date for the award and payment of permanent total disability benefits. The selection should be based on the dates upon which the experts found the claimant to have been permanently and totally disabled."

**5.** In *Miracle,* we also cited this statutory language from W.Va.Code, 23–4–6(n) (1978):
"A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities compara-

ble to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time shall be considered in determining the issue of total disability."

**6.** We recognize that an injury to an older person can cause more severe consequences than would occur to a younger person. Nothing in this opinion should be taken to imply that the age factor can be utilized to diminish the severity of the injury or its consequences.

■ Admittedly, the rule established here with regard to the age question has not received any substantial discussion in our prior cases. For this reason, we do not believe that this claimant should be penalized because his doctors were not asked with sufficient clarity to separate the age factor from the primary inquiry as to the extent of the progression or aggravation of the disability arising from the relevant injuries. We, therefore, reverse the decision of the Appeal Board and remand the case to enable the claimant to further develop this issue.

Reversed and remanded.