DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Charles HAMM, Jr., Respondent.

No. 96–1380.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1997.

Decided May 19, 1997.

**ARGUED:** Barry H. Joyner, Office of the Solicitor, United States Department Of Labor, Washington, DC, for Petitioner. Roger Daniel Forman, Forman & Crane, L.C., Charleston, West Virginia, for Respondent. **ON BRIEF:** J. Davitt McAteer, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Office of the Solicitor, United States Department Of Labor, Washington, DC, for Petitioner.

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and DUFFY, United States District Judge for the District of South Carolina, sitting by designation.

Reversed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge WIDENER and Judge DUFFY joined.

## OPINION

WILKINSON, Chief Judge:

Respondent Charles Hamm is entitled to disability benefits for pneumoconiosis under both the federal Black Lung Benefits Act, 30 U.S.C. §§ 901–945, and the West Virginia workers' compensation statute, W. Va.Code §§ 23–1–1 to 23–6–1. The question before us is how to give proper effect to the Act, which is designed to supplement, but not duplicate, state benefits for pneumoconiosis.

Here the Benefits Review Board held that Hamm's federal benefits should be offset by only 20 percent of his total state benefits because only 20 percent of those benefits could be attributed to pneumoconiosis. The Director of the Office of Workers' Compensation Programs appeals, arguing that the Board erred in failing to aggregate Hamm's prior partial disability awards for pneumoconiosis in determining what portion of his

West Virginia benefits were granted due to that condition. We agree. Properly accounting for those prior awards, 50 percent of Hamm's state disability benefits are attributable to pneumoconiosis, and his federal benefits should have been offset accordingly. We therefore reverse.

### I.

Hamm receives lifetime benefits from West Virginia for total disability. Prior to obtaining his total disability award, Hamm received a number of permanent partial disability (PPD) awards from the state. In 1974, 1977, and 1988, he obtained PPD awards of 15, 15, and 20 percent respectively for pneumoconiosis. The second and third awards were based on increases in his total impairment due to pneumoconiosis to 30 percent and finally 50 percent. Hamm also received a 4 percent PPD award for injury to his left index finger in 1960 and a 5 percent award for a back injury in 1979.

In 1986, Hamm began receiving federal black lung benefits. After receiving his third pneumoconiosis award, Hamm applied for total disability benefits on the basis of that award and his pre-existing disabilities. In 1989, West Virginia granted his request in the form of a second injury life award (SILA). Under the West Virginia workers' compensation statute, a partially disabled employee is entitled to a second injury life award when the employee suffers further injury and the combination of previous injury, the "second" injury, and "factors such as age, education, and intelligence" combine to render the individual unemployable. *See* W. Va.Code § 23–3–1(d)(1); *Cardwell v. State Workmen's Compensation Comm'r*, 171 W.Va. 700, 301 S.E.2d 790, 796 (1983). The term "injury" includes "occupational pneumoconiosis and any other occupational disease." W. Va.Code § 23–4–1.

Upon learning of the SILA in 1992, the Department of Labor (DOL), following longstanding practice, aggregated Hamm's three pneumoconiosis awards and concluded that 50 percent of his total disability, and therefore his SILA, was attributable to pneumoconiosis. Pursuant to the offset provision of the Black Lung Benefits Act, DOL then re-

duced Hamm's prospective federal black lung payments by an amount equal to 50 percent of the SILA and sought reimbursement for previous overpayments. Hamm requested an administrative hearing. Relying on *Bennett v. Director, Office of Workers' Compensation Programs,* 18 Black Lung Rep. 1–48 (Ben.Rev.Bd.1994), the administrative law judge held that because the SILA expressly referred only to Hamm's 20 percent PPD award for pneumoconiosis, the Director had only demonstrated that 20 percent of the SILA could be attributed to pneumoconiosis. The ALJ therefore determined that Hamm's federal benefits should be offset, but only by 20 percent of the second injury award. The Benefits Review Board affirmed the ALJ's decision.

The Director appeals, contending that the Board erred in failing to aggregate the three PPD awards in determining what portion of Hamm's second injury benefits was attributable to pneumoconiosis.

## II.

The Black Lung Benefits Act, 30 U.S.C. §§ 901–945, provides benefits to coal miners who suffer death or total disability on account of pneumoconiosis. In passing the Act, however, "Congress did not intend that the federal government would become the primary benefits provider. Rather Congress expressed 'a clear legislative desire ... for state workers' compensation programs to be the primary provider of disability payments and for the federal government to be responsible only if the state program is not adequate.'" *Carbon Fuel Co. v. Director, Office of Workers' Compensation Programs,* 20 F.3d 120, 121–22 (4th Cir.1994) (quoting *Freeman v. Harris,* 625 F.2d 1303, 1307 (5th Cir.1980)).

■ This legislative purpose is expressed in the offset provision of the Act, which reduces federal black lung benefits "by the amount of any compensation received under or pursuant to any ... State workmen's compensation law because of death or disability due to pneumoconiosis." 30 U.S.C. § 932(g). The offset provision thus eliminates any duplication of state benefits, *see Carbon Fuel,* 20 F.3d at 122, ensuring that

the scarce resources of the Black Lung Disability Trust Fund are directed to miners who are not already receiving adequate compensation under a state program. The Director must establish the amount of the offset. *Bennett,* 18 Black Lung Rep. at 1–51.

■ Hamm concedes that his federal benefits should be offset, but contends that they should be reduced by only 20 percent of his second injury award because the only pneumoconiosis award explicitly mentioned in the SILA is his final 20 percent PPD award. We reject this conclusion, as it accords with neither West Virginia law nor the evidence and would vitiate the congressional intent underlying the offset provision.

### A.

Hamm first argues that neither the West Virginia workers' compensation statute nor relevant case law require the Workers' Compensation Commissioner to base all second injury awards on an aggregation of prior PPD awards. We disagree. The plain language of the statute requires the Commissioner to consider the cumulative effect of an employee's injuries. An employee is entitled to a SILA when the employee becomes "permanently and totally disabled *through the combined effect of* [ ] *previous injury and a second injury* received in the course of ... employment." W.Va.Code § 23–3–1(d)(1) (emphasis added). Hamm's second injury for purposes of the statute was his additional 20 percent impairment due to pneumoconiosis. His previous injury consisted of pre-existing disability resulting from pneumoconiosis and the injuries to his finger and back. Hamm offers no suggestion as to how else one should determine the combined effect of these injuries other than by aggregating the partial disability awards. Moreover, the West Virginia Supreme Court of Appeals has explicitly held that "all prior injuries are to be cumulated toward consideration of the claim for total disability." *Gillispie v. State Workmen's Compensation Comm'r,* 157 W.Va. 829, 205 S.E.2d 164, 168 (1974).

Under West Virginia law in effect at the time Hamm's SILA was awarded, a claimant seeking a second injury award was presumed

to be totally disabled if the sum of the claimant's previous PPD awards was at least 85 percent. W.Va.Code § 23–4–6(d) (1985); *Gillispie*, 205 S.E.2d at 168–69. Hamm therefore suggests that at most, aggregation is required only in cases where this presumption is invoked. This argument simply ignores West Virginia precedent, however. In both *Hunter v. Workers' Compensation Comm'r*, 182 W.Va. 133, 386 S.E.2d 500 (1989), and *Linville v. State Workmen's Compensation Comm'r*, 160 W.Va. 549, 236 S.E.2d 41 (1977), the Supreme Court of Appeals considered whether applicants for a second injury award had demonstrated that they were totally disabled. In each case, the court conducted its analysis by aggregating the claimant's prior PPD awards, yet in neither case was the total sufficient to invoke the 85 percent presumption.

### B.

Hamm further asserts that there is no direct evidence that his SILA was predicated on his aggregate disability due to pneumoconiosis. Hamm's contention, however, is contradicted by the record. Hamm's second injury award clearly states that it is based on his disability resulting from pneumoconiosis and other injuries:

> [I]t appearing that the claimant has suffered a 20% permanent partial disability ... as a result of his injury of October 31, 1984 due to occupational pneumoconiosis; and it appearing further that the claimant suffers from pre-existing permanent disability attributable to multiple prior injuries, and *through the combined effects of these injuries and occupational pneumoconiosis* is now permanently and totally disabled ... it is hereby ordered that the claimant be granted compensation on a permanent total disability basis .... (emphasis added).

Hamm's PPD awards for pneumoconiosis in turn establish that he was 50 percent disabled on account of pneumoconiosis. The percentage of each award corresponded to the *increase* in Hamm's total impairment due to his condition. Hamm's second 15 percent disability award thus states that it is based on total impairment of 30 percent due to pneumoconiosis, "an increase of 15% over and above that previously awarded 11–21–74." Likewise, his 20 percent award was based on the finding of the West Virginia Occupational Pneumoconiosis Board that his impairment had increased to 50 percent, "representing an additional 20% pulmonary functional impairment above that previously found...." * We find it difficult to imagine what further evidence could be required to establish that the SILA was based on Hamm's 50 percent disability due to pneumoconiosis.

Relying on *Bennett v. DOWCP*, 18 Black Lung Rep. 1–48 (Ben.Rev.Bd.1994), the ALJ made much of the fact that the SILA does not explicitly mention Hamm's first two pneumoconiosis awards:

> [T]he order refers only to claimant's 20% disability award due to pneumoconiosis.... Moreover, the order limits the charges to claimant's former coal mine employer to those charges which would be assessed for a 20% permanent partial disability award, providing further evidence that claimant's state award was based on a finding of a 20% disability due to pneumoconiosis.

This focus on the reference to the 20 percent award simply ignores the language stating that the basis of the award was the cumulative effect of his pneumoconiosis and other injuries. Furthermore, the ALJ's reading of the SILA misconstrues West Virginia's second injury scheme. A SILA necessarily makes specific mention of the second injury—here the 20 percent disability—because a worker's employer is chargeable only for the portion of the SILA attributable to that injury. W. Va.Code § 23–3–1(d)(1). But the basis for the total disability finding underlying a SILA "is unrelated to the question of chargeability of the amounts paid resulting from the award." *Gillispie*, 205 S.E.2d at

---

* The Board is comprised of physicians appointed by the Workers' Compensation Commissioner. W. Va.Code § 23–4–8a. It reviews pneumoconiosis disability claims for the Commissioner and makes a written report of findings and conclusions regarding every medical issue in controversy. W. Va.Code §§ 23–4–8, 23–4–8c.

169. To treat the reference to the second injury as the explanation for the total disability determination would lead to implausible results. Under that approach, if Hamm's finger injury had been the second injury, *none* of his SILA could have been attributed to pneumoconiosis. We find *Bennett* unpersuasive because it leads to an illogical outcome.

### III.

West Virginia has determined that Hamm suffers 50 percent permanent disability on account of pneumoconiosis. Based on his pneumoconiosis and other injuries, the state awarded him permanent total disability benefits in the form of a second injury life award. In light of this, to reduce Hamm's federal benefits by only 20 percent of the SILA would leave both the state and federal governments providing compensation for the remaining 30 percent disability due to pneumoconiosis. This is precisely the sort of duplication of benefits which Congress enacted the offset provision to avoid. Accordingly, we reverse the decision of the Benefits Review Board and hold that Hamm's federal black lung benefits should be offset by 50 percent of the amount of his second injury award.

*REVERSED.*