383 S.E.2d 75

**Arnold MIRACLE**

v.

**WORKERS' COMPENSATION COMMISSIONER and Eastern Associated Coal Corporation.**

**No. 18891.**

Supreme Court of Appeals of West Virginia.

July 13, 1989.

Richard G. Rundle, Pineville, for Arnold Miracle.

Sarah E. Smith, Bowles, McDavid, Graff & Love, Charleston, for Workers' Compensation Com'r

MILLER, Justice:

This is an appeal by the claimant, Arnold Miracle, from an order of the Workers' Compensation Appeal Board, dated September 23, 1988, which affirmed a ruling of the Workers' Compensation Commissioner granting the claimant a second injury life award effective January 20, 1987. The claimant contends that the Appeal Board was clearly wrong in not finding that his disability commenced on January 25, 1973, the date of his injury. We disagree.

The claimant was employed by Eastern Associated Coal Corporation as an underground coal miner. On January 25, 1973, the claimant, then fifty-six years old, suffered a severe hip injury in a rock fall at work. The claimant underwent a total hip replacement and was originally granted a 25 percent permanent partial disability (PPD) award. The award was subsequently increased to 30 percent PPD as a result of further deterioration of the hip.

In September, 1983, the claimant petitioned for reopening of his claim. While reopening was pending, the claimant's original hip prosthesis failed, and in June, 1984, he underwent a total hip arthroplasty. After this operation, the Commissioner's examiner found an additional 5 percent disability attributable to the compensable injury. Based on this report, the Commissioner, in September, 1985, granted the claimant an additional 5 percent PPD award, or a total award of 35 percent PPD for the hip injury. The claimant protested this ruling.

It was not until a hearing on October 30, 1986, that the claimant's attorney advised that he would move for second injury development and asked that the case be continued to the next available docket. The claimant subsequently submitted a report from George F. Fordham, M.D., dated January 20, 1987, detailing all of the claimant's earlier impairments. Dr. Fordham concluded that these disabilities, when coupled with the 1973 hip injury, rendered the claimant permanently and totally disabled. This was the first medical report indicating that the claimant had suffered a permanent and total disability.

On October 5, 1987, the claim was submitted to the Commissioner for decision on the claimant's motion for a second injury life award pursuant to W.Va.Code, 23–3–1.[1] On February 2, 1988, the Commissioner granted the claimant a permanent total disability (PTD) award and specified January 20, 1987, the date of Dr. Fordham's report, as the date of the onset of such disability. The claimant appealed, alleging that his permanent total disability had commenced on January 25, 1973, the date of injury. By

---

1. W.Va.Code, 23–3–1, provides, in pertinent part:

"If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury[.]"

We summarized the purpose of the second injury statute in Syllabus Point 2 of *Pertee v. State Workmen's Compensation Comm'r,* 163 W.Va. 215, 255 S.E.2d 914 (1979): "The second injury life award statute, W.Va.Code, 23–3–1, was purposely designed to encourage employers to hire disabled workers by not charging an employer for preexisting disabilities."

order dated September 23, 1988, the Appeal Board affirmed the Commissioner's ruling.

The question of upon what date payment of a PTD award should commence has not been given much discussion by this Court. W.Va.Code, 23-4-18, provides, in pertinent part: "In all cases where compensation is awarded or increased, the amount thereof shall be calculated and paid from the date of disability."

In our earliest case interpreting this provision, *Burgess v. State Compensation Comm'r*, 121 W.Va. 571, 5 S.E.2d 804 (1939), a divided Court affirmed a decision awarding PTD benefits commencing on the date of the Appeal Board's decision. There the claimant, who had suffered a serious spinal injury in 1933, had been granted a 30 percent PPD award which was subsequently increased to 50 percent. In April, 1938, he petitioned to reopen the claim for a PTD award on the ground that his condition had grown progressively worse. The Commissioner increased the PPD award to 70 percent, and the claimant appealed.

The Appeal Board reversed the Commissioner's ruling, found that the claimant was permanently and totally disabled, and ordered PTD benefits to be paid from the date of its order in June, 1939. As a result, the claimant received no disability benefits during the nearly two-year period between the last payment of PPD benefits and the date of the Appeal Board's decision. On appeal to this Court, the claimant apparently contended that, as a matter of law, his permanent total disability must have existed at the time his PPD payments ceased. Specific reliance was placed on that portion of W.Va.Code, 23-4-18, quoted above.[2]

In *Burgess*, the Court articulated two reasons for its decision to affirm the Appeal Board's ruling. First, the Court found that in view of the conflicting evidence concerning the extent of the claimant's impairment, "his disability was not ascer-tained, and could not be said to exist in legal effect, until the entry of the Appeal Board's order." 121 W.Va. at 575, 5 S.E.2d at 806. Second, the Court noted that the claimant had been retained by the employer in a less physically demanding job during the pendency of the PTD claim and had received wages in excess of the available PTD benefits for that entire period. Under these circumstances, the Court concluded that it would be inequitable to permit the claimant to obtain workers' compensation benefits in addition to the wages he had earned during this time period.

In *Dunlap v. State Compensation Director*, 149 W.Va. 266, 140 S.E.2d 448 (1965), we considered whether a PTD award related back to the date of the injury, and, if so, whether temporary total disability (TTD) benefits received thereafter should be deducted from the PTD award. The Court relied on W.Va.Code, 23-4-6(i) (1961), which, it was held, "requires the director to deduct from a permanent partial disability award all payments previously received by the claimant under a prior temporary total disability award." 149 W.Va. at 269, 140 S.E.2d at 450. As a consequence, the Court ruled that the PTD award should be reduced by the amount of previously paid TTD payments.[3] However, as we are not here concerned with a TTD offset problem, *Dunlap* is not particularly helpful.

Finally, in *Anderson v. State Workers' Compensation Comm'r*, 174 W.Va. 406, 327 S.E.2d 385 (1985), the claimant, after having been granted a 65 percent PPD award, obtained reopening of his claim and was granted a second injury life award under W.Va.Code, 23-3-1. The PTD award was calculated from July 22, 1979, the day after the last payment of PPD benefits. The claimant contended that the PTD award should have been calculated from

---

**2.** Although W.Va.Code, 23-4-18, has been amended several times since the decision in *Burgess,* the statute still retains this language. *See* 1976 W.Va.Acts ch. 134.

**3.** The statutory language relied upon in *Dunlap* has since been amended, and W.Va.Code, 23-4-6(*l*), now provides, in pertinent part: "Except as otherwise specifically provided in this chapter, temporary total disability benefits payable under subdivision (b) of this section shall not be deductible from permanent partial disability awards payable under subdivisions (e) or (f) of this section."

the date he filed a claim for his second injury, an occupational pneumoconiosis claim, on July 27, 1974. This Court rejected that argument on the ground that there was no evidence the claimant, who had continued working in his usual occupation until he retired in 1983, was totally disabled during the period covered by the PPD award.

Our cases illustrate some of the obvious, inherent difficulties in determining the date upon which an injured worker becomes permanently and totally disabled. Medical evidence and expert opinion are frequently conflicting, since estimates of permanent disability are often nothing more than that—estimates. As we recognized in *Griffith v. State Workmen's Compensation Comm'r*, 157 W.Va. 837, 843, 205 S.E.2d 157, 161 (1974), "[t]he rating of disabilities, regardless of legislative precision or medical expertise, remains an inexact science." *See Posey v. State Workmen's Compensation Comm'r*, 157 W.Va. 285, 290–92, 201 S.E.2d 102, 105–06 (1973); *Miles v. State Compensation Comm'r*, 136 W.Va. 183, 190–91, 67 S.E.2d 34, 38–39 (1951); Syllabus, *Stone v. Compensation Appeal Bd.*, 106 W.Va. 572, 146 S.E. 372 (1929). The issue can be complicated where, as here, the original injury was not initially sufficiently severe to result in permanent total disability, but has subsequently progressed or become aggravated, resulting in several reopenings and additional PPD awards.

The second injury statute, which permits prior impairments to be considered in the permanent disability calculus, adds another dimension. In this area, further problems arise because physicians frequently evaluate only the second injury and ignore the residual disability from prior injuries. Moreover, medical reports often do not assess the individual's ability to work, which, under *Posey* and related cases,[4] sets the standard for permanent total disability. This type of evaluation is often left to experts in the field of vocational rehabilitation.

The legislative mandate of W.Va.Code, 23-4-18, provides a general but workable solution. The statutory focus is on payment "from the date of disability." The determination of the degree of disability is based on the reports of the various physicians and other experts who have examined the claimant. *See Stewart v. State Workmen's Compensation Comm'r*, 155 W.Va. 633, 186 S.E.2d 700 (1972); *McGeary v. State Compensation Director*, 148 W.Va. 436, 135 S.E.2d 345 (1964). It would seem logical, therefore, to make the date of permanent total disability depend on the date that a medical examiner or other competent expert determines the permanent total disability to exist. In this case, the Commissioner chose the date of Dr. Fordham's report, which was January 20, 1987. While technically the more correct date would be January 16, 1987, the date of the examination, we do not consider this to be a significant difference.

This rule is consistent with the conclusions of other jurisdictions where there is no specific language in the workers' compensation statute setting the date for the award and payment of PTD benefits. The Utah court in *Oman v. Industrial Comm'n of Utah*, 735 P.2d 665, 667 (App.), *cert. denied*, 765 P.2d 1277 (Utah 1987), without any extended discussion, approved "commencing benefits as of the first date of medical confirmation of permanent total

---

**4.** In Syllabus Point 3 of *Posey v. State Workmen's Compensation Comm'r, supra*, we said:

"A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training. Each case will be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience."

*See Cardwell v. State Workmen's Compensation Comm'r*, 171 W.Va. 700, 301 S.E.2d 790 (1983). In addition, W.Va.Code, 23-4-6(n), now provides:

"A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time shall be considered in determining the issue of total disability."

disability." *See also Petition of Lapinski,* 126 N.H. 772, 497 A.2d 841 (1985); *Fitzpatrick v. Freightliner Corp.,* 62 Or.App. 762, 662 P.2d 8, *review denied,* 295 Or. 297, 668 P.2d 381 (1983).

We, therefore, conclude that a compensable injury which does not initially or of itself produce a permanent total disability[5] may become progressively worse over time or combine with prior impairments under the second injury statute, W.Va.Code, 23–3–1, so as to result in a permanent total disability. In such circumstances, the "date of disability," from which a permanent total disability award will be calculated and paid within the meaning of W.Va.Code, 23–4–18, is the first date on which medical or other expert evidence indicated that such permanent total disability existed.[6]

For the foregoing reasons, we affirm the orders of the Appeal Board and the Commissioner.

Affirmed.

5. Where it is apparent that the initial injury or the second injury under W.Va.Code, 23–3–1, is so severe that permanent total disability occurred at that point, the date of disability is the date of such injury.

6. In this case, the PTD rating was established by one medical report prepared by Dr. Fordham. In the companion case of *Young v. Workers' Compensation Comm'r,* 181 W.Va. 440, 383 S.E.2d 72, we deal with the question of an appropriate date where there are multiple reports, stating in Syllabus Point 2:

"Where there are multiple reports from various experts which establish that the claimant has currently reached permanent total disability status, the Workers' Compensation Commissioner has a reasonable discretion in selecting the beginning date for the award and payment of permanent total disability benefits. The selection should be based on the dates upon which the experts found the claimant to have been permanently and totally disabled."