383 S.E.2d 72

**Cleo L. YOUNG**

v.

**WORKERS' COMPENSATION COMMISSIONER and Eastern Associated Coal Corporation.**

**No. 18620.**

Supreme Court of Appeals of West Virginia.

July 13, 1989.

Amos C. Wilson, Logan, for Young.

Bowles, McDavid, Graff & Love, Charleston, for Workers' Comp. Com'r et al.

MILLER, Justice:

This is an appeal by the claimant, Cleo L. Young, from a final order of the Workers' Compensation Appeal Board, dated April 15, 1988, which affirmed a ruling of the Workers' Compensation Commissioner granting the claimant a second injury life award effective March 26, 1986. The claimant contends that the Appeal Board was clearly wrong in not finding that his disability commenced on August 31, 1978, the date of injury.

The claimant was employed by Eastern Associated Coal Corporation as an underground coal miner. On August 31, 1978, the claimant, then thirty-three years old, injured his back at work.

The claimant's application for workers' compensation benefits was ruled compensable, and he was subsequently referred by the Commissioner to A.A. Abplanalp, M.D., an orthopedist, for evaluation. Dr. Abplanalp found that the claimant had not returned to work since the date of injury on the advice of his treating physicians and diagnosed the claimant as suffering from chronic lumbosacral strain. Dr. Abplanalp noted that the claimant had suffered previous back injuries, for which he had been granted a 15 percent permanent partial disability (PPD) award and estimated his total orthopedic impairment following the 1978 injury at 20 percent. Dr. Abplanalp also stated, however, that "this claimant should not resume work in the mines, but should either work outside the mine or be seen by Vocational Rehabilitation in an attempt to rehabilitate him into some other type of gainful employment."

In reliance on Dr. Abplanalp's report, the Commissioner, by order dated June 13, 1980, granted the claimant an additional 5 percent PPD award for his August 31, 1978 back injury. The claimant protested this ruling.

In support of his protest, the claimant submitted into evidence the office notes and testimony of Tony C. Majestro, M.D., an orthopedist and the claimant's treating physician. Dr. Majestro noted that he had treated the claimant for one of his prior back injuries and had recommended at that time that the claimant seek lighter employment outside of the mines. Dr. Majestro stated that the claimant had been off work since his August, 1978 back injury and diagnosed the claimant as suffering from chronic lumbosacral strain, probably superimposed on degenerative disc disease at L4–L5.

In a report of July 31, 1979, Dr. Majestro recommended that the claimant be referred to light work outside the mines and stated that if the claimant was unable to obtain such employment, "then I feel he probably will need to change his occupation and be returned to Voc. Rehab. for job retraining in lighter duty type capacity." Dr. Majestro testified that he believed the claimant was suffering from an underlying degenerative disc disease which had been aggravated by multiple back injuries and that the claimant would probably have recurrent back problems if he returned to his former employment.

The claimant also submitted vocational evaluations conducted by Arthur C. Ballas, Ph.D., and Paul L. Crawford, Ph.D., dated January 11, 1986, and January 28, 1986, respectively. These reports indicated that the claimant had an eighth-grade education and that his significant work experience consisted of his job in the mines as an uncertified electrician from 1968 to 1978. Dr. Ballas characterized this position as skilled labor requiring heavy physical exertion and stated that due to the highly specialized nature of the coal industry, the claimant had no significant transferable skills. Dr. Ballas further noted that the claimant had unsuccessfully attempted on several occasions to work as a heavy-equipment operator, but was forced to quit due to flareups of back pain.

Dr. Crawford concluded that the claimant had been unable to work for the past

ten years due to his back problems. Both evaluators concluded that although the claimant was relatively young, his marginal education, limited work background with no significant transferable skills, and incapacity for sustained physical effort on a regular basis rendered him functionally incapable of returning to the work he had done in the past and unlikely to benefit from rehabilitative efforts.

Finally, the claimant submitted a report, dated March 26, 1986, from Jorge de la Piedra, M.D., an orthopedist, and a subsequent report from R.A. Crawford, Jr., M.D. Both doctors concluded that the claimant was permanently and totally disabled from the combined effects of his injuries, lacked the residual functional capacity to return to gainful employment, and would not benefit from rehabilitation.

By order dated August 17, 1987, the Commissioner granted the claimant a permanent total disability (PTD) award, of which 5 percent was chargeable to the employer and the remainder was payable from the Second Injury Reserve Fund. The Commissioner found that the first medical evidence indicating that the claimant was permanently and totally disabled was Dr. de la Piedra's report dated March 26, 1986, and made the award payable from that date. The claimant appealed the Commissioner's ruling insofar as it did not make the PTD award effective from the date of injury. The Appeal Board, by order dated April 15, 1988, affirmed the Commissioner's ruling, finding that there was no evidence of record that the claimant was permanently and totally disabled from returning to work until Dr. de la Piedra's report.

■ The only issue in this appeal is whether the Appeal Board was clearly wrong in not making the PTD award relate back to the date of injury. W.Va.Code, 23–4–18, provides, in pertinent part: "In all cases where compensation is awarded or increased, the amount thereof shall be cal-culated and paid from the date of disability." In the Syllabus of *Miracle v. Workers' Compensation Comm'r*, 181 W.Va. 443, 383 S.E.2d 75 (1989), we held:

"A compensable injury which does not initially or of itself produce a permanent total disability may become progressively worse over time or combine with prior impairments under the second injury statute, W.Va.Code, 23–3–1, so as to result in a permanent total disability. In such circumstances, the 'date of disability,' from which a permanent total disability award will be calculated and paid within the meaning of W.Va.Code, 23–4–18, is the first date on which medical or other expert evidence indicated that such permanent total disability existed."

In *Miracle*, we observed that often the question of whether an individual is rendered permanently and totally disabled involves not only medical, but vocational experts. The fact pattern in this case is somewhat similar to *Miracle* in that the claimant was granted a PTD award payable from the Second Injury Reserve Fund. The second injury, which occurred in 1978, was a back injury which aggravated previous back injuries for which the claimant had been granted a 15 percent PPD award. The latest back injury was initially evaluated as increasing his orthopedic impairment by 5 percent.

It was not until the claimant moved for a second injury evaluation, and the medical and vocational experts began to evaluate his total impairment based upon all of his prior injuries, that the permanent total disability became apparent. Vocational evaluations made in January, 1986, established that, by virtue of his combined injuries, the claimant was unable to perform any remunerative work for which he is suited by experience or training.[1]

■ The vocational reports were buttressed by the medical report in March, 1986, of Dr. de la Piedra, an orthopedist, who examined the claimant with regard to

---

1. This is the test for permanent total disability set out in Syllabus Point 3 of *Posey v. State Workmen's Compensation Comm'r*, 157 W.Va. 285, 201 S.E.2d 102 (1973):

"A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training.

all of his physical impairments as required under the second injury statute, W.Va. Code, 23–3–1.[2] This report concluded that the claimant was totally and permanently disabled. It is the date of this report, March 26, 1986, that the Commissioner selected as the date of the onset of the claimant's permanent total disability. Where there are multiple reports from various experts which establish that the claimant has currently reached permanent total disability status, the Commissioner has a reasonable discretion in selecting the beginning date for the award and payment of permanent total disability benefits. The selection should be based on the dates upon which the experts found the claimant to have been permanently and totally disabled.

In this case, we find no abuse of discretion in the Commissioner's selection of March 26, 1986, as the date from which the claimant's PTD award should be paid. We, therefore, affirm the orders of the Appeal Board and the Commissioner.

Affirmed.

Each case will be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience."

See also W.Va.Code, 23–4–6(n).

2. The pertinent portion of W.Va.Code, 23–3–1, is:

"If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury[.]"