394 S.E.2d 528

Leonard CARTER

v.

Emily SPIELER, Workers' Compensation Commissioner.

and

Willie ADKINS and Arnold F. Griffith

v.

Emily SPIELER, Workers' Compensation Commissioner.

Nos. 19370, 19371.

Supreme Court of Appeals of West Virginia.

June 7, 1990.

James M. Robinson, Robinson & Rice, L.C., Huntington, for Leonard Carter, Willie Adkins and Arnold F. Griffith.

Roger W. Tompkins, Atty. Gen., Dawn E. Warfield, Deputy Atty. Gen., Atty. General's Office, Charleston, for Emily Spieler.

## WORKMAN, Justice:

These two cases involve three individuals seeking to prohibit the Workers' Compensation Commissioner (Commissioner) from withholding alleged "overlapping" permanent partial disability (PPD) benefits from their respective permanent total disability (PTD) benefits through writs of mandamus and prohibition. Although these cases have not been consolidated, we will treat them as such for purposes of this opinion because the legal issue raised in each case is identical. For clarification, however, we will separately relate the factual background of each petitioner's claim.

### LEONARD CARTER

On December 23, 1983, Carter sustained a back injury in connection with his employ-ment. He filed a workers' compensation claim (No. 84–41009) and was awarded 20% PPD for a total award of $17,520.50. The award covered the period of December 3, 1984 to June 15, 1986. Claimant protested this award, contending he was entitled to permanent total disability.

Carter subsequently re-injured his back and injured his groin on November 19, 1985. He filed claim number 86–37262 in connection with these injuries and was awarded 2% PPD for the groin injury which amounted to $1,175.12. Carter was also awarded 5% PPD for the back injury and received $4,437.80 in benefits for such award. Claimant protested both of these awards, contending he was entitled to per-manent total disability.

Carter was granted a second injury life award with benefits beginning January 8, 1986, by order of the Commissioner entered on April 12, 1989. This second injury life award was granted in connection with claim number 86–37262. By a check writ-ten on April 27, 1989, the Workers' Com-pensation Fund (Fund) paid Carter total disability benefits due him in claim number 86–37262 in conjunction with the second injury life award. These benefits were cal-culated from the January 8, 1986, the date of injury onset, to May 31, 1989.

When calculating the total benefits owed to Carter, the Fund deducted PPD benefits previously paid for this same period (1–8–86 to 5–31–89) with respect to claim num-ber 86–37262. The Fund also deducted PPD benefits previously paid to Carter in claim number 84–41009 in the amount of $5,040.07, which covered the period of Jan-uary 8, 1986 (onset date of second injury life award) to June 15, 1986 (end of time period covered by this claim). Carter does not object to the deduction of the PPD benefits paid with respect to claim number 86–37262, but does object to the deduction of the PPD benefits paid in connection with claim number 84–41009.

### WILLIE ADKINS

Adkins filed two workers' compensation claims on May 13, 1985, in connection with

his employment with Island Creek Coal Company. Adkins was awarded a 4.5% PPD award in connection with a claim predicated on occupational hearing loss (No. 84–67688 HL). The date of last exposure in connection with the hearing loss claim was determined to be September 7, 1983. The Fund paid Adkins a lump sum of $3,826.44 on September 3, 1986, for the period covering September 7, 1983, to January 11, 1984. Claimant protested this award, contending he was entitled to permanent total disability.

Adkins was granted a 20% PPD award for an occupational pneumoconiosis (OP) claim (No. 84–67890 OP). The award for this claim was paid in a lump sum on October 15, 1986, in the amount of $17,067.03 and covered the period of September 6, 1983, to March 19, 1985. Both the employer and Adkins protested this award but withdrew their protests when claim number 84–67688 HL was submitted on a motion for a permanent total disability award.

By order of the Commissioner dated September 15, 1988, Adkins was granted a second injury life award on claim number 84–67688 HL. The Commissioner determined that Adkins suffered from "pre-existing permanent disability attributable to multiple prior injuries and occupational pneumoconiosis, and through the combined effect of these injuries, occupational pneumoconiosis, and occupational hearing loss, the claimant became permanently and totally disabled on July 28, 1988." Upon Adkin's appeal, the Workers' Compensation Appeal Board (Appeal Board) changed the onset date for the second injury life award from July 27, 1988, to September 7, 1983, the last date of exposure.

The Fund paid Adkins PTD benefits in a lump sum payment of $69,031.07 on claim number 84–67688 HL covering the period of September 7, 1983, to October 31, 1988. Deducted from the PTD benefits was the amount of $17,067.03. The Fund took the position that these benefits were "overlapping" PPD benefits from claim number 84–67890 OP. Adkins objects to the deduction of the alleged "overlapping" benefits. Also deducted was the amount of $3,826.44

which amount represented PPD benefits previously paid in claim number 84–67688 HL. Adkins does not challenge the Commission's authority to deduct these benefits.

## ARNOLD F. GRIFFITH

On December 2, 1983, Griffith filed a claim for OP benefits against his employer, Energy Coal Company. Griffith was awarded a 5% PPD award in connection with claim number 84–48131 OP and was paid a lump sum award on September 6, 1985, in the amount of $4,251.60. This award covered the period of July 24, 1983, to December 11, 1983. No protest was filed by either party to this award.

Griffith was awarded a 1% PPD award on a hearing claim loss on September 23, 1986, in connection with claim number 84–68788 HL. The award was paid in a lump sum on September 8, 1987 in the amount of $850.32 and covered the period July 23, 1983, to August 20, 1983. Griffith protested the award on the issue of permanent disability.

The Commissioner determined, by order dated September 9, 1988, that Griffith was permanently and totally disabled. Accordingly, he received a second injury life award in claim number 84–68788 HL with benefits to begin February 19, 1988. As the result of an appeal to the Appeal Board, the onset date of the second injury life award was changed from February 19, 1988 to July 23, 1983. On September 15, 1988, Griffith received the first payment on the PTD award in the amount of $11,949.68 which covered the period July 23, 1983, to October 31, 1988. This amount was calculated by deducting the 1% PPD award ($850.32) previously paid in claim number 84–68788 HL. Thereafter, payments were made on a monthly basis pursuant to W.Va.Code § 23–4–18 (1985). Also deducted from the first PTD award was the amount of $4,251.60. The Commission deducted this amount by claiming that it constituted "overlapping" PPD benefits from claim number 84–48131. Griffith does not object to the deduction of the 1% PPD award from claim number 84–68788 HL,

but does object to the deduction of the $4,251.60 paid in connection with claim number 84–48131 OP.

Each of the petitioners maintains that the Fund wrongfully deducted PPD benefits paid on claims other than the one in which a second injury life award was made when calculating his respective PTD award. The claimants do not dispute the right of the Commissioner to deduct PPD benefits from the PTD award in the claim in which the second injury life award was granted. Because we determine that the Commission is under legislative mandate when calculating the amount of PTD benefits to deduct *all* PPD awards that were paid subsequent to the onset date of disability established for the second injury life award on claims that cumulatively rendered the claimant permanently and totally disabled, we deny the petitioners' writs of mandamus and prohibition.

Workers' compensation is undisputedly a body of law created by the Legislature. Accordingly, we must examine the applicable statutes to determine whether the Commission's deduction of PPD benefits in calculating petitioners' respective PTD benefits was proper. The seminal provision which provides the foundation for our analysis is W.Va.Code § 23–4–6(k) (Supp. 1989). This statute provides that: "Compensation payable under any subdivision of this section shall not exceed the maximum nor be less than the weekly benefits specified in subdivision (b) of this section." The other statute critical to this issue is W.Va. Code § 23–4–18 (1985) which provides in pertinent part that: "In all cases where compensation is awarded or increased, the amount thereof shall be calculated and paid from the date of disability." When these two statutes, W.Va.Code §§ 23–4–6(k) and 23–4–18 are read in *pari materia,* as they must be, deduction of the previously awarded PPD benefits from the PTD award is necessarily required.

As we explained in *Nichols v. Workers' Compensation Comm'r,* No. 18189, (W.Va. March 31, 1988): " 'When the director of workmen's compensation makes an award ..., he is required, in making payment, to

compute the amount thereof from the date of disability and to take into account all prior disability benefits previously paid to the claimant for the same disability.' " *Nichols,* slip op. at 2 (quoting Syl. Pt. 3, *Dunlap v. State Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448 (1965)). Applying this rule, we reasoned that

[i]t would be improper for permanent total disability benefits to be paid for the period of June 17, 1975 through June 12, 1979 because the 'permanent total disability payment would then overlap with the temporary total disability payment, resulting in the employee receiving duplicate benefits in excess of the statutory weekly award limit.'

*Nichols,* slip op. at 2–3 (quoting *Cropp v. State Workmen's Compensation Comm'r,* 160 W.Va. 621, 624–25, 236 S.E.2d 480, 483 (1977)).

Although neither *Dunlap* nor *Nichols* involved the offsetting of PPD awards in calculating a PTD award, the reasoning applied in those cases holds true with respect to petitioners' claims. All PPD benefits paid subsequent to the disability date established for the PTD award on claims which contributed to the PTD ruling are benefits paid for the *same* injury—the second injury which resulted in the PTD award. The effect of the PTD award is to "supersede the prior [PPD] award so that the former award ... disappear[s] ... and only the total permanent disability award remains." *Dunlap,* 149 W.Va. at 272, 140 S.E.2d at 452.

In objecting only to the deduction of PPD awards from claims which contributed to but were not the claim in which the second injury life award was made, petitioners fail to grasp the nature and purpose of a second injury award. The quintessence of a second-injury award is a prior injury which contributed in part to the Commission's determination that a claimant is permanently and totally disabled. *See Gillispie v. State Workmen's Compensation Comm'r,* 157 W.Va. 829, 836, 205 S.E.2d 164, 169 (1974). "[U]nder our work[ers'] compensation statute, [a claimant is permanently and totally disabled]

when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training." Syl. Pt. 3, in part, *Posey v. State Workmen's Compensation Comm'r*, 157 W.Va. 285, 201 S.E.2d 102 (1973). Because of the statutorily-created second injury reserve fund, the "employer is only responsible for the amount of disability attributable to the current 'second injury' " while "[t]he balance of the disability award is paid from the second-injury fund." *Cardwell v. State Workmen's Compensation Comm'r*, 171 W.Va. 700, 301 S.E.2d 790, 797 (1983).

In determining whether a claimant qualifies for a second injury award, the Commission is entitled to determine whether the employee has become "permanently and totally disabled from the combined effect of ... [a] previous injury and a second injury received in the course of and as a result of his employment...." W.Va.Code § 23–3–1 (1985). This consideration of "prior impairments ... in the permanent disability calculus" provides the analytical basis for our determination that PPD awards granted in a prior injury claim which is found to contribute to the granting of a second injury award must be deducted when calculating the PTD award. *Miracle v. Workers' Compensation Comm'r*, 181 W.Va. 443, 383 S.E.2d 75, 78 (1989).

As with any compensation award, the Commissioner must determine the onset date of disability with respect to the second injury. *See* W.Va.Code § 23–4–18. This date of disability for a second injury award "is the first date on which medical or other expert evidence indicated that ... permanent total disability existed." Syllabus, in part, *Miracle*, 181 W.Va. at 444, 383 S.E.2d at 76. All benefits to which the claimant is entitled on the second injury life award must be calculated from this onset date of injury. By law, the claimant cannot receive benefits in excess of the statutorily-established maximum weekly rates. *See* W.Va.Code § 23–4–6(k).

It stands to reason that a claimant could receive PPD benefits for a "first" injury during a time period which overlaps with the date of disability established for a second injury life award. When this occurs, the PPD benefits which were awarded subsequent to the onset date of disability for the second injury must be deducted as compensation received for the second injury life award. This is necessary, as we explained above, because the PTD award supersedes the PPD award in effect. Unless the Commission deducts such "overlapping" PPD awards when calculating PTD awards, it will be in violation of the statutory mandate that no claimant shall receive benefits which exceed the established maximum weekly rate. *Id.* It does not take a mathematical genius to realize that claimants in the petitioners' situations stand to receive a windfall in clear violation of the statutory intent absent the deduction of "overlapping" PPD awards.

Claimants cite W.Va.Code §§ 23–4–1c(i) and 23–4–1d(b) (Supp.1989) to support their contention that the Commission cannot deduct PPD benefits in calculating PTD benefits. Both of these statutory provisions pertain to the Commission's recovery of benefits which were wrongfully awarded. According to these statutes, overpayments which resulted because of wrongful awards can only be recovered from future PPD benefits. *See* W.Va.Code §§ 23–4–1c(i) and 23–4–1d(b). Neither of these provisions is applicable to this case because recovery of wrongfully awarded benefits is not at issue.

Based on the foregoing, petitioners' writs are hereby denied.

Writs denied.