IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JOSEPH CRAIG DORSEY,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-254          (JCN: 2023006378)**

**BLACKHAWK MINING, LLC,**
**Employer Below, Respondent**

**and**

**JOHN ADKINS**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-256          (JCN: 2023023264)**

**MARFORK COAL COMPANY, LLC,**
**Employer Below, Respondent**

**FILED**

**May 22, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joseph Craig Dorsey ("Mr. Dorsey") appeals the June 12, 2024, order of the Workers' Compensation Board of Review ("BOR"). Respondent Blackhawk Mining, LLC ("Blackhawk") filed a timely response. Mr. Dorsey filed a reply. Petitioner John Adkins ("Mr. Adkins") appeals the May 22, 2024, order of the BOR. Respondent Marfork Coal Company, LLC ("Marfork") filed a timely response. Mr. Adkins filed a reply.[1] The issues on appeal are whether Mr. Dorsey and Mr. Adkins are entitled to initial lump sum permanent partial disability award payments based on their dates of disability and whether they are entitled to interest on the initial lump sum payments.

This Court has jurisdiction over these appeals pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the BOR's decisions but no substantial question of law. These cases satisfy the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the

---

[1] Mr. Dorsey and Mr. Adkins are represented by Samuel B. Petsonk, Esq. Blackhawk is represented by T. Jonathan Cook, Esq. Marfork is represented by Sean Harter, Esq.

reasons set forth below, the BOR's decision with respect to Mr. Dorsey is reversed, and his case is remanded for further proceedings consistent with this decision. Mr. Adkins' appeal is dismissed as moot.

This is a consolidated appeal of two workers' compensation occupational pneumoconiosis cases in which Mr. Dorsey and Mr. Adkins, who were awarded permanent partial disability benefits, challenge the date on which their award payments commenced. In both cases, Mr. Dorsey and Mr. Adkins started receiving installment payments soon after the date of their respective permanent partial disability award orders. Mr. Dorsey and Mr. Adkins argued before the BOR that their permanent partial disability payments should have been paid from an earlier date, which would have entitled them to an initial lump sum payment representing the period from the date of disability through the date of the permanent partial disability award orders. Mr. Dorsey and Mr. Adkins also sought an award of interest for the delayed commencement of payments. The BOR denied Mr. Dorsey and Mr. Adkins relief in the separate orders and they now appeal to this Court.

We conclude that, in light of the record in this case, the date of disability referenced in West Virginia Code § 23-4-18 (2003) requires permanent partial disability payments in occupational pneumoconiosis claims to commence as of the date of the Occupational Pneumoconiosis Board ("OP Board") findings and that periodic payments due between the date of disability and the date upon which periodic payments commence should be paid in a lump sum arrearage payment to the claimant. However, West Virginia Code § 23-4-16a (2005) does not provide for interest on permanent partial disability arrearage payments under the circumstances of these cases. The entire award in Case No. 24-ICA-256 is fully paid, so we find the appeal of Mr. Adkins to be moot. However, insofar as periodic payments remain for Mr. Dorsey in Case No. 24-ICA-254, the BOR order of June 12, 2024, in that case is reversed and remanded for further action consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Dorsey filed an application for workers' compensation occupational pneumoconiosis benefits on September 9, 2022, alleging a date of last exposure to occupational dust of July 12, 2022. According to Mr. Dorsey's arguments before the BOR, a September 2022, medical report was submitted with his application for occupational pneumoconiosis benefits.[2] At the time, Mr. Dorsey was sixty-two years old and had a forty-three-year work history as a coal miner. He spent twenty years as an underground coal miner and twenty-three years as a surface coal miner. His chest x-rays were interpreted as showing a nodular and fibrotic process throughout both lungs of large coalescent opacities,

---

[2] Mr. Dorsey did not include the September 2022 medical report in the appendix record.

consistent with progressive massive fibrosis.[3]  Eleven months after filing his application, Mr. Dorsey underwent pulmonary function testing at the Charleston Area Medical Center's Occupational Lung Disease Center ("Occupational Lung Disease Center"). The OP Board found on August 1, 2023, that Mr. Dorsey's pulmonary function tests indicated total pulmonary impairment attributed to occupational pneumoconiosis. The OP Board's findings were transmitted by the West Virginia Offices of the Insurance Commissioner ("OIC") to the claim administrator who issued an order dated October 3, 2023, granting Mr. Dorsey a sixty-five percent permanent partial disability award.[4] According to the order, Mr. Dorsey would be paid $174,246.80 in 260 biweekly installments of $670.18. Payments commenced soon thereafter and were prospective only, so that no lump-sum arrearage payment was made.

Mr. Dorsey filed a protest to the October 3, 2023, order with the BOR. He argued that, pursuant to West Virginia Code § 23-4-18, permanent partial disability payments must begin from the date of disability, which Mr. Dorsey argues was in September of 2022, the same month that an initial medical report, not included in the appendix record, found impairment due to occupational pneumoconiosis.  On June 12, 2024, the BOR issued an order affirming the claim administrator's order dated October 3, 2023, insofar as it did not provide for any lump sum arrearage payment. The BOR found that the claim administrator adhered to the provisions of West Virginia Code § 23-4-6a, and that Mr. Dorsey was not entitled to a lump sum arrearage payment that Mr. Dorsey contended should have been paid beginning in September 2022, his alleged date of disability. The BOR's order did not address Mr. Dorsey's request for interest payments.

Mr. Adkins filed an application for workers' compensation occupational pneumoconiosis benefits on June 21, 2023, alleging a date of last exposure to occupational dust on June 21, 2023. According to Mr. Adkins, his application included an April 2, 2023, pulmonary function test administered by Richard Spencer, M.D., which found that Mr. Adkins had pulmonary impairment due to occupational pneumoconiosis.[5] Mr. Adkins was

---

[3] Progressive massive fibrosis, also known as complicated pneumoconiosis, is a severe form of irreversible and progressive dust induced lung disease which causes larger masses of fibrotic tissue to coalesce, producing extensive fibrosis, emphysema formation, and cavitation and destruction of normal lung tissue. Progressive massive fibrosis causes significant pulmonary impairment and in some cases death.

[4] The award is consistent with a 2011 West Virginia Informational Letter (No. 177) issued by the OIC declaring that claimants who suffer from total pulmonary function impairment attributable to occupational pneumoconiosis should be awarded a sixty-five percent permanent partial disability award.

[5] Neither Mr. Adkins' application for benefits nor Dr. Spencer's pulmonary function testing were included in the appendix record.

referred by the OP Board to the Occupational Lung Disease Clinic on November 2, 2023. According to the OP Board's findings dated November 2, 2023, Mr. Adkins had an eighteen-year exposure to the hazards of occupational pneumoconiosis. He worked as an underground coal miner for fifteen years and a surface miner for three years. Mr. Adkins' chest x-rays showed no evidence of occupational pneumoconiosis. However, his pulmonary function studies revealed a fifteen percent pulmonary impairment.[6] By order dated December 27, 2023, the claim administrator granted Mr. Adkins a fifteen percent permanent partial disability award based on the November 2, 2023, OP Board findings.[7] The order states that Mr. Adkins would be paid monthly installments of $2,912.09 from January 1, 2024, through February 23, 2025.

Mr. Adkins filed a protest to the December 27, 2023, order with the BOR and argued that his permanent partial disability payments must begin from the date of disability, which he asserts was April 2, 2023, the date of Dr. Spencer's pulmonary function tests which presumably found pulmonary impairment. On May 22, 2024, the BOR issued an order affirming the claim administrator's order dated December 27, 2023, concerning the arrearage issue. Like in Mr. Dorsey's case, the BOR stated that the claim administrator adhered to the requirements of West Virginia Code § 23-4-6a, and that Mr. Adkins was not entitled to an arrearage payment. The BOR order did not address interest payments. Mr. Adkins appealed to this Court. During oral argument before this Court, Mr. Adkins' counsel disclosed that the entire permanent partial disability award had been paid to Mr. Adkins by installments.

## STANDARD OF REVIEW

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, and summarized by the Supreme Court of Appeals of West Virginia ("SCAWV") as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further

---

[6] The OP Board based the fifteen percent impairment on its November 2, 2023, diffusion studies administered at the Occupational Lung Disease Clinic.

[7] In occupational pneumoconiosis claims, if a claimant was exposed to the hazards of occupational pneumoconiosis for ten years during the fifteen years immediately preceding his or her date of last exposure, it is presumed that the claimant's pulmonary impairment is due to his or her occupation. This presumption is not conclusive. W. Va. Code § 23-4-8c(b).

proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the Board of Review;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

## DISCUSSION

Before addressing the merits of the Mr. Dorsey's and Mr. Adkins' arguments, we recognize the statutory nature of West Virginia's workers' compensation claim process, including permanent partial disability awards for occupational pneumoconiosis. In West Virginia, "[t]he right to workmen's compensation is wholly statutory and in no way based on the common law; the statutes are *sui generis* and controlling, and the rights, remedies, and procedure provided thereby are exclusive…[A] claimant is entitled to receive benefits only in the manner and to the extent authorized by statute…." *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 270-71, 140 S.E.2d 448, 451-52 (1965) (citations omitted).

In most workers' compensation injury and disease claims, a claim administrator[8] has sole authority to act on behalf of an employer when making claim decisions, and employers have no right protest a claim administrator order. *See* W. Va. Code R. § 85-1-7.3 (2009). In injury and most occupational disease claims, a claim administrator determines a claimant's impairment from the occupational injury or disease, and it issues a permanent partial disability award order which only a claimant may protest.[9] *See* W. Va. Code § 23-4-1d(a) (2005); W. Va. Code R. § 85-1-7.3. However, in occupational

---

[8] The phrase "claim administrator" encompasses private carriers, self-insured employers, and the administrator of the Old Fund, as the context requires.

[9] A claim administrator's impairment findings are typically based on medical evaluations to which claimants are referred for examination.

pneumoconiosis claims, the OP Board, and not the claim administrator, exclusively decides a claimant's pulmonary impairment from occupational pneumoconiosis. *See* W. Va. Code § 23-4-8c(c)(1) (2009). The impairment findings of the OP Board are forwarded to the claim administrator, which must issue the permanent partial disability award in accordance with the OP Board's findings. *See* W. Va. Code § 23-4-6a (2005); W. Va. Code R. § 85-1-10.5.d (2009). Unlike injury and most occupational disease claims, employers have a right to protest permanent partial disability award orders in occupational pneumoconiosis claims. *See* W. Va. Code § 23-5-1a(b)(1) (2022); W. Va. Code R. § 85-1-7.3.a. The findings of the OP Board shall be affirmed unless the decision is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. *See* W. Va. Code § 23-4-6a. "If the [claim administrator] makes an award for permanent partial…disability, the [claim administrator] shall start payment of benefits…within fifteen working days from the date of the award." W. Va. Code § 23-4-1d(a). Finally, permanent partial disability awards are typically paid in installments, but a claim administrator may make lump sum payments. *See* W. Va. Code R. § 85-1-10.5.c.

*Commencement of PPD Benefit Installment Payments*

The BOR found that the claim administrator in each case complied with the relevant statutes by making installment payments of the awards that did not include any arrearage payments based upon a prior date of disability. Mr. Dorsey and Mr. Adkins argue that the BOR made an error of law because permanent partial disability benefits must begin on the "date of disability" pursuant to the plain text of West Virginia Code § 23-4-18, which states in part, "[p]ayments [of benefits] may be made in…periodic installments determined by the commission in each case…In all cases where compensation is awarded or increased, *the amount of compensation shall be calculated and paid from the date of disability*." (emphasis added). Blackhawk and Marfork support the BOR's orders and contend that West Virginia Code § 23-4-18 is inapplicable and that West Virginia Code § 23-4-1d(a) ("If the [claim administrator] makes an award for permanent partial… disability, the [claim administrator] shall start payment of benefits…within fifteen working days from the date of the award") controls.

We reject Blackhawk's and Marfork's request that this Court find that West Virginia Code 23-4-18 is inapplicable to permanent partial disability claims. Under the rule of *in pari materia*, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Similarly, "[w]here it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions." *Charleston Gazette v. Smithers*, 232 W. Va. 449, 468, 752 S.E.2d 603, 622 (2013) (quoting *State v. Williams*, 196 W. Va. 639, 641, 474 S.E.2d 569, 571 (1996)).

Blackhawk argues that the date of disability trigger in West Virginia Code § 23-4-18 applies only to permanent *total* disability awards, and that as long as it complies with West Virginia Code § 23-4-1d(a), and payments begin within fifteen days of an order awaiting permanent partial disability benefits, no lump sum arrearage payments are required. However, on its face West Virginia Code § 23-4-18 applies to permanent partial disability awards as well as permanent total disability awards. Moreover, the SCAWV has found that "any award of disability benefits made for a personal injury, whether temporary total, permanent partial or permanent total, 'shall be calculated and paid from the date of disability.'" *Dunlap v. State Comp. Dir.*, 149 W. Va. at 268, 140 S.E.2d at 450.

Applying the "date of disability" standard is not straightforward, however. "The phrase 'date of disability' is not statutorily defined, and no statutory guidance is provided regarding how that date should be determined [for permanent partial disability awards]. Consequently, in the absence of legislative direction, this Court has been required to discern a suitable approach." *Lambert v. Workers' Comp. Div.*, 211 W. Va. 436, 444, 566 S.E.2d 573, 581 (2002). Several SCAWV cases address how to determine the date of disability concerning permanent *total* disability claims, but we have located no definitive authority concerning the "date of disability" language in West Virginia Code § 23-4-18 in the context of permanent *partial* disability awards.

Mr. Dorsey and Mr. Adkins argue that for occupational pneumoconiosis permanent partial disability claims, the date of disability should begin on a date determined by the OP Board, and if the OP Board does not specify a particular date of disability, the date of disability should be the first date on which a medical expert offers an opinion that a claimant has pulmonary impairment due to occupational pneumoconiosis. In support of their position, Mr. Dorsey and Mr. Adkins cite *Lambert* and *Miracle v. Workers' Comp. Comm'r*, 181 W. Va. 443, 383 S.E.2d 75 (1989) which interpret "date of disability" in the context of permanent total disability onset. The SCAWV recognized in *Miracle* the "inherent difficulties in determining the date upon which an injured worker becomes permanently and totally disabled. Medical evidence and expert opinion are frequently conflicting, since estimates of permanent disability are often nothing more than that - estimates." *Id.*, 181 W. Va. at 446, 383 S.E.2d at 78.

However, determining the date of disability for permanent total disability onset may be distinguished from establishing a date of disability for permanent partial disability payments. "In awards short of those based on total permanent disability the time when payments begin is not of controlling importance, because the limited number of payments will ultimately be made, and the claimant cannot be seriously prejudiced."[10] *Burgess v. State*

---

[10] West Virginia Code § 23-4-6(l) (2005) also provides that permanent partial disability installment payments will be made to the dependents of a claimant who dies before being paid in full. "Compensation, either temporary total or permanent partial, under

7

*Comp. Comm'r*, 121 W. Va. 571, 575, 5 S.E.2d 804, 806 (1939). This approach reflects that a permanent partial disability award is a fixed monetary sum, and changing the date of disability will not alter the amount of the award. On the other hand, a permanent total disability award is not a fixed monetary amount because permanent total disability benefits begin on the date of disability and are paid until a claimant reaches retirement age. Thus, a change in the date of disability in permanent total disability awards can increase or decrease an employer's liability. These differences suggest the importance of precision when determining dates of disability in permanent total disability awards, while establishing a date of disability for purposes of permanent partial disability claims is generally less consequential, although the legislative direction that such claims be processed expeditiously must be met.

*Burgess* primarily addresses permanent total disability onset and has been modified by *Lambert* and *Miracle*, but the date of disability language in *Burgess* offers a sound approach to deciding the date of disability in Mr. Adkins' and Mr. Dorsey's occupational pneumoconiosis permanent partial disability claims. *Burgess* affirmed the former Workers' Compensation Appeal Board ("Appeal Board"),[11] which found that the date of disability was the date of its order. *Burgess* described two reasons for affirming the Appeal Board: 1) the Appeal Board was a factfinding agent and the date of disability was in dispute until it made a decision; and 2) the claimant was working through the date of the award. The former reasoning is applicable to this case.

As established by West Virginia Code § 23-4-8c[12] and acknowledged by Mr. Adkins and Mr. Dorsey, the OP Board is the fact finder in occupational pneumoconiosis permanent

---

this section shall be payable only to the injured employee and the right to the compensation shall not vest in his or her estate, except that any unpaid compensation which would have been paid or payable to the employee up to the time of his or her death, if he or she had lived, shall be paid to the dependents of the injured employee if there are any dependents at the time of death." *Id.*

[11] When *Burgess* was decided, "[t]he [Workers'] Compensation Appeal Board [was] a fact-finding tribunal, and its findings of fact [were] not…set aside…unless clearly wrong." *Id*. at Syl. Pt. 1. The court held that, "[u]p to the date when the order of the Appeal Board was entered…, the disability of the claimant was in dispute…[and because the claimant's] disability was not ascertained, [it] could not be said to exist in legal effect, until the entry of the Appeal Board's order." *Id*., 121 W. Va. at 575, 5 S.E.2d at 806. *Burgess* found that the date of disability was the date on which the fact finder made its decision regarding the claimant's disability.

[12] West Virginia Code § 23-4-8c reads, in part:

partial disability claims. It reviews the medical evidence and issues a decision in the form of findings, which must be adopted by the private carrier or self-insured employer's claim administrator. Before the OP Board issues its findings, a claimant's impairment is undetermined and legally does not exist. However, once the OP Board releases its findings, a claimant's disability is established for the purposes of West Virginia Code § 23-4-18. We find this method consistent with *Burgess* and not prejudicial to either Mr. Adkins or Mr. Dorsey under the record in this case. We therefore hold that the date of disability for Mr. Adkins' and Mr. Dorsey's occupational pneumoconiosis permanent partial disability claims is the date on which the OP Board issued its findings.

The BOR affirmed the private carrier's orders which presumed the date of disability was the date of the claim administrator's permanent partial disability award. However, as aforementioned, we find that the date of disability is the date of the OP Board findings. With respect to Mr. Adkins, he has already received full payment for his permanent partial disability award. With no payments due, we find the issue of arrearage payments moot. "Generally, moot questions are not proper for consideration by this Court… Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property are not properly cognizable by a court." *State ex rel. Jeannette H. v. Pancake*, 207 W. Va. 154, 159, 529 S.E.2d 865, 870 (2000) (citation omitted). Because Mr. Adkins was fully paid for his permanent partial

---

(a) The Occupational Pneumoconiosis Board, as soon as practicable, after it has completed its investigation, shall make its written report, to the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, of its findings and conclusions on every medical question in controversy…

(c) The findings and conclusions of the board shall set forth, among other things, the following:

(1) Whether or not the claimant or the deceased employee has contracted occupational pneumoconiosis and, if so, the percentage of permanent disability resulting therefrom;

(2) Whether or not the exposure in the employment was sufficient to have caused the claimant's or deceased employee's occupational pneumoconiosis or to have perceptibly aggravated an existing occupational pneumoconiosis or other occupational disease; and

(3) What, if any, physician appeared before the board on behalf of the claimant or employer and what, if any, medical evidence was produced by or on behalf of the claimant or employer….

disability award, we dismiss as moot the issue of whether he is entitled to arrearage payments.

Mr. Dorsey is still receiving installment permanent partial disability payments. Therefore, his case is remanded to the claim administrator, and it is ordered that Mr. Dorsey be paid arrearage permanent partial disability benefits in a manner consistent with this opinion.

*Interest on Delayed Installment Payments*

The next issue is whether Mr. Dorsey and Mr. Adkins would be entitled to interest on any lump sum permanent partial disability payments that might accrue from the date of disability until the first payment of benefits. In arguments before this Court, Mr. Dorsey and Mr. Adkins described the relief being requested as prejudgment interest, outlined in West Virginia Code § 56-6-31(b) (2018).[13] They acknowledge the workers' compensation interest statute, West Virginia Code § 23-4-16a, which states:

> Whenever any award of temporary total, permanent partial or permanent total disability benefits or dependent benefits is made on or after the first day of July, one thousand nine hundred seventy-one, and a protest is filed to the award or an appeal is taken from the award by an employer only and not by the claimant or dependent and the award is not ultimately denied or reduced following the protest or appeal, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall add interest to the award at the simple rate of six percent per annum from the date the award would have been payable had the protest or appeal not been filed or taken, exclusive of any period for which a

---

[13]West Virginia Code § 56-6-31(b) states as follows:

In any judgment or decree that contains special damages, as defined below, or for liquidated damages, the court may award prejudgment interest on all or some of the amount of the special or liquidated damages, as calculated after the amount of any settlements. Any such amounts of special or liquidated damages shall bear simple, not compounding, interest. Special damages include lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court. If an obligation is based upon a written agreement, the obligation bears prejudgment interest at the rate and terms set forth in the written agreement until the date the judgment or decree is entered and, after that, the judgment interest is the same rate as provided for below in subsection (c) of this section.

10

continuance was granted upon motion of any party other than the protesting or appealing employer. Any interest payable shall be charged to the account of the protesting or appealing employer to the extent that the benefits upon which such interest is computed are charged to the account of the employer.

However, Mr. Dorsey and Mr. Adkins argue that West Virginia Code § 23-4-16a only addresses post-judgment interest. Therefore, this Court must apply the prejudgment interest mandates in West Virginia Code § 56-6-31(b).

Mr. Dorsey's and Mr. Adkins' argument fails because employers covered by workers' compensation insurance are immunized from liability for statutory or common law damages. "Prejudgment interest, according to West Virginia Code § 56-6-31 (1981) and the decisions of this Court interpreting that statute, is not a cost, but is a form of compensatory damages intended to make an injured plaintiff whole as far as loss of use of funds is concerned." Syl. Pt. 1, *Buckhannon-Upshur Cnty. Airport Auth. v. R&R Coal Contracting, Inc.*, 186 W. Va. 583, 413 S.E.2d 404 (1991). West Virginia Code § 23-2-6 (2022) exempts employers from compensatory damages. "Any employer subject to this chapter who procures and continuously maintains workers' compensation insurance as required by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee…." W. Va. Code § 23-2-6.

Workers' compensation claims and administrative procedures are wholly statutory and encompassed in Chapter 23 of the West Virginia Code. There is no indication the Legislature intended West Virginia Code § 56-6-31(b) to apply to workers' compensation administrative claims. Indeed, we cannot locate any workers' compensation precedent in our state which applied West Virginia Code § 56-6-31(b) to an award for permanent partial disability benefits or other workers' compensation claims. Moreover, the Legislature did not include additional language in West Virginia Code § 23-4-16a that would entitle a claimant to interest on permanent partial disability arrearage payments. Applying principles of statutory construction, we presume the Legislature intentionally excluded other forms of interest not described in West Virginia Code § 23-4-16a. "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." *Ratcliff v. State Comp. Com'r*, 146 W. Va. 920, 925, 123 S.E.2d 829, 831 (1962). If the Legislature intended interest to be paid for permanent partial disability arrearage, it would have included language in West Virginia Code § 23-4-16a permitting such payments. In short, West Virginia Code § 56-6-31 is inapplicable to workers' compensation claims.

## CONCLUSION

Accordingly, we reverse the BOR's June 12, 2024, order and remand Mr. Dorsey's claim for further proceedings consistent with this Court's decision. Mr. Adkins' appeal is dismissed as moot.

Reversed, in part, and Remanded.

**ISSUED:** May 22, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

12